**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

---

DO YUN HWANG; SANG HYUN LEE; and
KANG HYEON SEO;

          Plaintiffs,

   -v.-

OVERSEAS EMPLOYMENT AND
INFORMATION SERVICE, INC. d/b/a EBI, INC.;
CHARLES HAN YOO a/k/a CHANG HAN YOO;
HYUN SOOK YOO; TRICIA MATUSZAK;
ALLEN FAMILY FOODS, INC.; and MOUNTAIRE
FARMS, INC.,

          Defendants.

---

**PJM 07 CV 0 4 8 1**

**COMPLAINT**

**FILED UNDER SEAL**

**JURY TRIAL REQUESTED**

## NATURE OF ACTION

Induced by the fraudulent misrepresentations of Defendants Overseas Employment and
Information Service, Inc. (hereinafter "OEIS"), Charles Han Yoo, Hyun Sook Yoo, and Tricia
Matuszak (collectively the "OEIS Defendants"), Plaintiffs Do Yun Hwang, Sang Hyun Lee, and
Kang Hyeon Seo (collectively the "Plaintiffs") retained the OEIS Defendants in their
applications to become legal permanent residents of the United States. Rather than provide the
promised services to the Plaintiffs, the OEIS Defendants committed fraud in their dealings with
Plaintiffs, engaged in unfair and deceptive practices, and breached their contractual and statutory
obligations. Defendants Allen Family Foods, Inc. (hereinafter "Allen Family Foods") and

Mountaire Farms, Inc. (hereinafter "Mountaire") (together the "Meat Processing Defendants") are liable for aiding and abetting the OEIS Defendants in their dealings with Plaintiffs.

The Plaintiffs by their attorneys, Donald P. Salzman, the Urban Justice Center, Vaughn C. Williams and Martha Jane Johnstone, complain as follows of Defendants:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

2. There is diversity of citizenship among the parties.

3. The amount in controversy exceeds $75,000 for each Plaintiff. The matter in controversy for each of the Plaintiffs is $1,022,000 for Do Yun Hwang, $1,035,000 for Sang Hyun Lee, and $1,015,000 for Kang Hyeon Seo. These amounts include actual damages (consisting of fees paid to OEIS, filing fees, relocation costs, and lost wages resulting from the lost opportunity of obtaining permanent legal resident status); damages for emotional distress resulting from Defendants' misconduct; punitive damages in an amount to be determined at trial but in any event no less than $500,000 each; and attorneys fees associated with bringing this action.

4. Venue is proper in the District of Maryland pursuant to § 1391(a).

## THE PARTIES

5. Plaintiff Do Yun Hwang is a national of South Korea and resides at 136-14 Northern Blvd, Apt. 4E, Flushing, NY 11354.

2

6.  Plaintiff Sang Hyun Lee is a national of South Korea and resides at 136-14 Northern Blvd, Apt. 4E, Flushing, NY 11354.

7.  Plaintiff Kang Hyeon Seo is a national of South Korea and resides at 90 Richmond Hill Road, Apt. 3N, Staten Island, NY 10314.

8.  Defendant OEIS d/b/a/ EBI, Inc. is a corporation organized under the laws of Washington, D.C. and doing business in the State of Maryland, with corporate offices located in Montgomery County at 8609 Second Avenue, Suite 203-B, Silver Spring, Maryland.

9.  OEIS also does business at 350 S. Grand Avenue, Suite 3930, Los Angeles, California.

10. In the Korean and Korean-American communities, OEIS does business under and is known by a number of other names including, but not limited to, EBI, Inc., EBI America, Chang Han Yoo Immigration Services, and Yoo Chang Han Immigration Agency.

11. Upon information and belief, Defendant Charles Han Yoo is a resident and citizen of the State of Maryland and is/was an officer, shareholder, and/or duly authorized agent of OEIS.

12. Upon information and belief, Defendant Hyun Sook Yoo is/was a resident and citizen of the State of Maryland and is/was an officer, shareholder, and/or employee of OEIS.

13. Upon information and belief, Defendant Tricia Matuszak, the daughter of Charles Han Yoo and Hyun Sook Yoo, is a resident and citizen of the State of California who, upon information and belief, is/was an officer, shareholder, and/or employee of OEIS.

14. Allen Family Foods, Inc. is a domestic corporation duly registered and authorized to do business in the State of Maryland with corporate offices located at 274 Nealson Street,

Hurlock, Maryland and processing plants at 18752 Harbeson Road, Harbeson, Delaware, and 12041 Cordova Road, Cordova, Maryland.

15. Mountaire Farms of Delaware, Inc. is a Delaware corporation with corporate offices and operations at Route 24 East, Millsboro, Delaware.  Mountaire transacts/transacted business in Maryland as result of its relationship with OEIS.

## STATEMENT OF FACTS

**The Green Card Application Process**

16. Federal immigration law permits employers to sponsor eligible alien workers for permanent residency (an "Applicant" or "Applicants") by providing a job offer if employers first obtain certification from the Department of Labor that there are not sufficient workers able, willing, qualified, and available for the job, and that the Applicant's employment will not adversely affect the wages and working conditions of workers in the United States similarly employed.  See Immigration and Nationality Act (hereinafter "INA") § 212(a)(5)(A), 8 U.S.C. § 1182(a)(5)(A).

17. If the Department of Labor finds these conditions to its satisfaction, it issues a "foreign labor certification" (hereinafter "labor certification").  This labor certification authorizes employers to file a Petition for Alien Worker, Form I-140 (by attaching the labor certification) with the Citizenship and Immigration Services Division (hereinafter "USCIS") of the Department of Homeland Security (previously, the Immigration and Naturalization Service or "INS"), purporting to sponsor the Applicant.

18. After approval of a Form I-140 (or, in some cases, simultaneous with filing of the Form I-140), an Applicant may file an Application to Register Permanent Residence or Adjust Status, Form I-485, with USCIS. The Applicant's immediate family members (spouse and children under 18 years of age) may also file applications for permanent residency as derivative beneficiaries of the alien worker's I-140. Based on the pendency of their applications for permanent residency, Applicants and their immediate family members are eligible to receive employment authorization cards.

19. Before an I-485 can be approved, the Applicant must submit to a personal interview by an immigration official at a local district office. Upon information and belief, Applicants normally receive permanent residency within a few months after this interview.

20. A single labor certification may only support one alien worker's I-140 petition at a time.

21. At all times relevant to this action, USCIS has allowed employers to use an already approved labor certification to support a new, substitute Applicant, if the original Applicant is no longer able or willing to take the certified job (a practice hereinafter referred to as "substitution"). Substitutions have been allowed as a courtesy to employers to enable them to avoid the cost and time of making a new labor certification application.

22. The process for requesting a substitution involves submitting either the original labor certification or a copy with the new Form I-140 on behalf of the substituted Applicant. If a copy is used, the employer must also submit a written notice of withdrawal of the Form I-140.

23. Notwithstanding the above practice of substitution, a single labor certification may never be used to obtain legal permanent resident status (or a "green card") for more than one

5

Applicant.  For example, once an Applicant has received a green card, the labor certification may no longer be used to support an I-140 petition on behalf of another alien worker.  If the original Applicant obtains a green card and subsequently leaves the certified job, the employer must apply for a new labor certification in order to sponsor a new alien worker.

24. Similarly, a labor certification application may not name an individual who has already obtained legal permanent residence as the alien worker.

25. The Department of Labor has, on more than one occasion, proposed the termination of substitution, in light of the strong incentive it creates for fraud and abuse.  The Department has stated that it does not condone or approve of "the sale, barter, or purchase of labor certifications" and that such a "secondary market" is inconsistent with the purposes and intent of federal law.  Labor Certification for the Permanent Employment of Aliens in the United States; Implementation of New System; Final Rule, 69 Fed. Reg. 77326, 77340 (Dec. 27, 2004).

**The OEIS Defendants' Business Practices**

26. At all times relevant to this action, OEIS was well-known in the Korean-American community as a provider of immigration services.

27. In Korean-language newspapers with national circulation and through its website (http://www.ebiamerica.com), OEIS advertised that it could assist Korean nationals to obtain green cards and work authorization.

28. OEIS's services included:

    a)  assisting Korean nationals to obtain job offers and already approved labor certifications from sponsoring employers, including, but not limited to, the Meat Processing Defendants.

b)  providing legal advice to Korean nationals as to their eligibility for green cards under federal immigration law and the procedure for employer sponsorship; and

c)  completing the I-140 and I-485 and related documents for both the employers and the immigrant workers.

29. Upon information and belief, the OEIS Defendants participated in a secondary market of labor certifications by selling the opportunity to obtain the benefit of an already approved labor certification by the process of substitution.  More specifically:

a)  the OEIS Defendants would represent to Applicants that the practice of substitution would result in faster processing time and speedier receipt of legal permanent residency;

b)  the OEIS Defendants charged Applicants a substantially higher fee for a substitution than for a new labor certification;

c)  upon information and belief, the OEIS Defendants sold labor certifications to Applicants even though the OEIS Defendants knew, or should have known, that those same certifications were (or would) be used by the OEIS Defendants and/or the Meat Processing Defendants to support other Applicants;

d)  upon information and belief, the OEIS Defendants sold labor certifications to Applicants even though the OEIS Defendants knew, or should have known, that the individuals named as alien workers on those certifications were already legal permanent residents;

e)  upon information and belief, the OEIS Defendants sold  Applicants labor

certifications that they knew, or should have known, were otherwise fraudulent

and would not or could not result in the Applicants' receipt of a green card.

30. By engaging in the above activities, the OEIS Defendants knowingly jeopardized the
probability of success of clients' applications.

31. Upon information and belief, the OEIS Defendants deliberately exploited the
immigration law in order to make a profit from Korean nationals attempting to secure legal
permanent residency status.

32. The OEIS Defendants have in fact substantially profited from the above activities.
Upon information and belief, they have charged Applicant clients between $28,000 and $42,000
each for their services, not including filing fees that the plaintiffs paid directly to immigration
authorities.

33. Upon information and belief, OEIS's actions did in fact arouse the suspicion of
immigration authorities, leading to an official investigation.

34. Upon information and belief, the investigation of OEIS by immigration authorities
further jeopardized the probability of success of their clients' applications.

**The Meat Processing Defendants' Actions**

35. The Meat Processing Defendants have also substantially profited and benefited from
this scheme, in the following ways, among others:

a)  upon information and belief, the Meat Processing Defendants benefited by

obtaining employees for positions that they otherwise had difficulty filling;

b) upon information and belief, the Meat Processing Defendants received a portion of the fee paid by Applicants to the OEIS Defendants and/or some other consideration for its role in OEIS' provision of services to Korean nationals.

36. Because of the extremely low wages and notoriously hazardous working conditions, the meat-packing and poultry processing industries have consistent trouble attracting and maintaining a reliable work force. Poultry processing companies may replace twenty percent of their employees every few months. Lena H. Sun & Gabriel Escobar, "On Chicken's Front Line," Wash. Post, Nov. 28, 1999.

37. Hourly wages for poultry workers have remained at 60% of the national average for manufacturing jobs for two decades. Roger Horowitz & Mark J. Miller, "Immigrants in the Delmarva Poultry Processing Industry: The Changing Face of Georgetown, Delaware and Environs," JSRI Occasional Paper #37, The Julian Samora Research Institute, Michigan State University East Lansing, Michigan, 1999.

38. In a November 30, 1999 article, the Washington Post quoted Charles C. "Chuck" Allen III, President of Defendant Allen Family Foods describing the shortage of poultry processing workers. According to Mr. Allen, "There are products that cannot be made because the work force isn't there." Gabriel Escobar, Wash. Post, Nov. 30, 1999.

39. In addition to the above, the acts and statements of OEIS related to the Meat Processing Defendants' sponsorship of the Applicant clients can be imputed to the Meat Processing Defendants', because they retained OEIS as their agent in the application process.

**The Defendants' Victimization of the Plaintiffs**

40. On the basis of representations that the OEIS Defendants made in marketing and otherwise, the Plaintiffs retained the OEIS Defendants to make their applications for green card status. The OEIS Defendants, pursuant to their agreements with the Meat Processing Defendants, thereafter (i) extended offers of employment to Plaintiffs, (ii) provided labor certifications pursuant to the practice of substitution, and/or (iii) submitted immigration applications on behalf of the Plaintiffs.

41. Upon information and belief, having decided that it was no longer in their best interest to stay in business, the OEIS Defendants directed their legal representative to send letters to OEIS' remaining clients on or around July 15, 2006 informing them that "no further actions" would be taken on their behalf. The letters alleged that OEIS had "fulfilled its obligations under its contract[s]" with its clients and unilaterally offered each $1,250 in consideration for waiving all claims.

**Do Yun Hwang, Sang Hyun Lee, and Kang Hyeon Seo**

42. Do Yun Hwang, Sang Hyun Lee, and Kang Hyeon Seo have very limited proficiency in speaking, understanding, or reading English.

43. All of Do Yun Hwang's, Sang Hyun Lee's, and Kang Heyon Seo's communications with OEIS were in Korean. Where OEIS communicated with each of them, it did so in Korean. Where OEIS provided them forms to be filed or that had been filed with immigration authorities, OEIS provided a Korean synopsis of the document.

44. Seeking assistance to become a legal permanent resident, Kang Hyeon Seo traveled from Staten Island, NY to Silver Spring, MD to visit OEIS' office in the fall of 2000.

45. Upon information and belief, at the time, Min Jae Song was a case manager at OEIS.

46. Min Jae Song described OEIS's services to Kang Hyeon Seo.

47. In or about the beginning of 2001, Kang Hyeon Seo made a second trip to OEIS' office, this time bringing along Do Yun Hwang and Sang Hyun Lee, who were also interested in becoming legal permanent residents.

48. At this meeting, Min Jae Song explained that OEIS could secure permanent resident status for Do Yun Hwang, Sang Hyun Lee, and Kang Hyeon Seo and that it offered a number of different plans for doing so.

49. Min Jae Song explained that the cost for OEIS' services varied based on the expected length of time that would pass prior to Do Yun Hwang's, Sang Hyun Lee's, and Kang Hyeon Seo's receipt of permanent resident status.

50. On or about February 14, 2001, Sang Do Yun Hwang, Sang Hyun Lee, and Kang Hyeon Seo made yet another visit to OEIS' office.

51. On this visit, they met with both Min Jae Song and defendant Tricia Yoo Matuszak.

52. Min Jae Song introduced Tricia Yoo Matuszak as an immigration attorney.  Min Jae Song explained that Tricia Yoo Matuszak did not speak Korean well; therefore, Min Jae Song would translate for her.

53. Based on this representation, Do Yun Hwang, Sang Hyun Lee, and Kang Hyeon Seo reasonably believed and relied upon the fact that Tricia Matuszak was an attorney and was competent to provide legal services.

54. Based on this representation, Do Yun Hwang, Sang Hyun Lee, and Kang Hyeon Seo also reasonably believed and relied upon the fact that Tricia Matuszak was speaking through and had supervisory authority over Min Jae Song.

55. Min Jae Song counseled Do Yun Hwang, Sang Hyun Lee, and Kang Hyeon Seo on their eligibility for permanent residency.

56. Min Jae Song also explained that Do Yun Hwang, Sang Hyun Lee, and Kang Hyeon Seo could be substituted for other workers' names on existing labor certifications.  She explained that the earlier the priority date for the existing labor certification, the sooner the Applicant would receive permanent resident status.

57. When asked whether they would have to work for the meat processing companies, Min Jae Song represented that Do Yun Hwang, Sang Hyun Lee, and Kang Hyeon Seo would not have to work for the companies.

58. Approximately two to three months later, Do Yun Hwang, Sang Hyun Lee, and Kang Hyeon Seo met with OEIS once more to assemble paperwork for their applications.

59. At that meeting, Min Jae Song told Do Yun Hwang, Sang Hyun Lee, and Kang Hyeon Seo that they would have to work for a short period of time for their sponsoring companies.

**Do Yun Hwang**

60. On or about February 14, 2001, Do Yun Hwang entered into a contract where he would pay $28,000 for OEIS' services.  On the day he signed the contract, he made a first payment of $7,000.

61. Upon information and belief, the contract provided that "OEIS shall be responsible for preparation of all the documents associated with the employment of the applicant, labor certification application and immigration petition for alien worker promising to make the best effort and cooperate to have the green card process completed in the shortest period."

62. Upon information and belief, OEIS knew that it would not make its "best effort". As described above, OEIS did not intend to provide Do Yun Hwang with a valid labor certification, was aware that their I-140 petitions were otherwise defective or knew, or should have known, that its practices jeopardized the probability of success of the applications it filed.

63. Upon information and belief, the contract further provided that "In the event it becomes impossible to enter into an employment agreement within 2 months from the date when the applicant submits the documents with the initial payment, the applicant shall be able to cancel the application process and request for refund of the entire amount of the application fee except $300."

64. Do Yun Hwang fully performed on his contract with OEIS.

65. In addition to making full payment, he paid all applicable filing fees.

66. In or about April of 2001, Allen Family Foods extended a job offer, through OEIS, to Do Yun Hwang. This job offer formed the basis of Allen Family Foods' I-140 application submitted by OEIS naming Do Yun Hwang as the beneficiary.

67. OEIS and Allen Family Foods, through OIES, represented to Do Yun Hwang that use of the substitute labor certification, with its associated priority date, would result in Do Yun Hwang's swift receipt of legal permanent resident status.

68. In fact, OEIS and Allen Family Foods knew or should have known that their practices jeopardized the probability of success of the applications it filed.

69. OEIS and Allen Family Foods made the aforementioned knowing misrepresentations in order to induce Do Yun Hwang into entering into an agreement to pay $28,000 for OEIS's services.

70. Upon information and belief, OEIS paid some consideration to Allen Family Foods for its participation and cooperation.

71. On or around April 10, 2001, OEIS submitted an I-140 to immigration authorities. At some time after that, OEIS received notice that the I-140 had been approved.

72. On or around May 21, 2002, OEIS submitted an I-485 and an application for employment authorization on Do Yun Hwang's behalf to immigration authorities.

73. Under the direction of OEIS, Do Yun Hwang relocated to Maryland to work for Allen Family Foods from March of 2003 until May of 2005. He did not work for Allen Family Foods for approximately six months between May and November of 2004.

74. While at Allen Family Foods, Do Yun Hwang noticed that other workers who were in the same situation as him stopped getting interviews.

75. Do Yun Hwang suspected that something might be wrong and contacted OEIS.

76. OEIS reassured him and told him to remain patient.

77. Do Yun Hwang was interviewed by immigration authorities on May 24, 2005.

78. OEIS offered to provide Do Yun Hwang with an attorney to accompany him to the interview, but he turned them down because it was too expensive.

79. Do Yun Hwang last spoke with OEIS in or around May of 2006. Although in the ordinary course applicants receive permanent residency within a few months after an interview, Do Yun Hwang has heard nothing further from immigration authorities since his May 24, 2005 interview.

80. Do Yun Hwang suffered substantial damages as a result of OEIS's actions.  In addition to substantial financial loss, Do Yun Hwang has suffered severe emotional distress inflicted by OEIS.

81. Because of OEIS's actions, Do Yun Hwang's future ability to apply for immigration benefits has been compromised as immigration authorities are likely to impute any fraud or wrongdoing to Do Yun Hwang and he would be barred by INA 212(a)(6)(C) (misrepresentation ground of inadmissibility).

82. Do Yun Hwang has been robbed of his opportunity to lawfully become a citizen of the United States.

83. Do Yun Hwang came to the United States hoping to build a better life for himself and his family and sought to lawfully become a permanent resident.  Instead, He feels that his future is completely in limbo and that he has no way out of the situation.  His earnest and honest efforts have been thwarted by OEIS's deceit, causing great financial and emotional damage to Do Yun Hwang.

**Sang Hyun Lee**

84. On or about February 14, 2001, Sang Hyun Lee entered into a contract where he would pay $28,000 for OEIS' services.  On the day he signed the contract, he made a first payment of $7,000.

85. Upon information, the contract provided that "OEIS shall be responsible for preparation of all the documents associated with the employment of the applicant, labor certification application and immigration petition for alien worker promising to make the best effort and cooperate to have the green card process completed in the shortest period."

86. Upon information and belief, OEIS knew that it would not make its "best effort". As described above, OEIS did not intend to provide Sang Hyun Lee with a valid labor certification or was aware that their I-140 petitions were otherwise defective.

87. Upon information and belief, OEIS knew, or should have known, that its practices jeopardized the probability of success of the applications it filed.

88. Upon information and belief, the contract further provided that "In the event it becomes impossible to enter into an employment agreement within 2 months from the date when the applicant submits the documents with the initial payment, the applicant shall be able to cancel the application process and request for refund of the entire amount of the application fee except $300."

89. Sang Hyun Lee fully performed on his contract with OEIS.

90. In addition to making full payment, he paid all applicable filing fees.

91. In or around April or May 2001, Allen Family Foods extended a job offer, through OEIS, to Sang Hyun Lee. This job offer formed the basis of Allen Family Foods' I-140 application submitted by OEIS naming Sang Hyun Lee as the beneficiary.

92. OEIS and Allen Family Foods, through OIES, represented to Sang Hyun Lee that use of the substitute labor certification, with its associated priority date, would result in Sang Hyun Lee's swift receipt of legal permanent resident status.

93. In fact, OEIS and Allen Family Foods knew or should have known that the labor certification that they sold to Sang Hyun Lee had been used to obtain legal permanent resident status for another alien worker or was otherwise fraudulent.

94. OEIS and Allen Family Foods made the aforementioned knowing misrepresentations in order to induce Sang Hyun Lee into entering into an agreement to pay $28,000 for OEIS's services.

95. Upon information and belief, OEIS paid some consideration to Allen Family Foods for its participation and cooperation.

96. On or around May 3, 2001, OEIS submitted an I-140 to immigration authorities.  On or around August 20, 2001, OEIS received notice that the I-140 had been approved.

97. On or around May 17, 2002, OEIS submitted an I-485 and an application for employment authorization on Sang Hyun Lee's behalf to immigration authorities.

98. On the direction of OEIS, Sang Hyun Lee relocated to Maryland and worked at Allen Family Foods' Cordova plant for approximately one year, beginning in February of 2003.

99. Upon information and belief, OEIS started to learn in late 2003 that immigration authorities had found a problem with its applications.

100.    Upon information and belief, based on this knowledge, OEIS and Allen Family Foods submitted a second I-140 using a different substitute labor certification for Sang Hyun Lee on or about January 30, 2004.

101.    OEIS and Allen Family Foods requested that "the alien beneficiary, Sang Hyung [sic] Lee . . . . replace alien [ ] on its enclosed labor certification." The request was signed by "Tricia Y. Matuszak, Representative of the Petitioner, Allen Family Foods, Inc."

102.    On or about January 30, 2004, OEIS and Allen Family Foods also filed an I-485 on behalf of Sang Hyun Lee to accompany the second I-140.

103.    On or about February 26, 2004, immigration authorities wrote to Tricia Yoo Matuszak at OEIS to explain that because Sang Hyun Lee's first I-140 had been revoked on the basis of fraud, his first application to adjust to permanent resident status was denied.

104.    Sang Hyun Lee also received a copy of this letter.

105.    Because he does not read or understand English, Sang Hyun Lee could not understand the letter.

106.    Lee Sang Hoon, a friend of Sang Hyun Lee's, had received a similar letter and could read slightly more English than Sang Hyun Lee.

107.    Lee Sang Hoon explained that the letter said Sang Hyun Lee would not be able to receive a green card using the application that OEIS had prepared; however, he was unable to explain why.

108.    Sang Hyun Lee then called OEIS and reasonably relied on OEIS to translate and explain the letter.

109.    OEIS explained to Sang Hyun Lee that immigration authorities had changed their policy.  OEIS further explained that although there may have been a problem with his first application, they could file a second application for him to resolve the situation.

110.    Sang Hyun Lee agreed to have OEIS file the second application.

111.    Upon information and belief, the original I-140 submitted on behalf of Sang Hyun Lee was withdrawn by immigration authorities because the original alien beneficiary of the underlying labor certification was already a legal permanent resident.

112.    Upon information and belief, OEIS concealed their wrongdoing Sang Hyun Lee for the purposes of preventing Sang Hyun Lee from exercising his right to rescind the contract or to otherwise exercise his rights with respect to OEIS or Allen Family Foods.

113.    The second I-140 was approved on or about March 15, 2004.

114.    On the direction of OEIS, Sang Hyun Lee went to work for Allen Family Foods in the Hurlock plant for approximately eight months beginning in or about April of 2005.

115.    Sang Hyun Lee was interviewed by immigration authorities in December of 2005.

116.    He was accompanied by his pastor and Lee Hoon Koh, an alleged attorney engaged by OEIS.

117.    Sang Hyun Lee had never met Lee Hoon Koh prior to the date of his interview with immigration authorities.

118.    Sang Hyun Lee paid approximately $700 for Lee Hoon Koh's services.

119.    As the interview was ending, immigration authorities asked to speak to Lee Hoon Koh privately regarding OEIS.

120.    Sang Hyun Lee last spoke with OEIS in or around December of 2005.

121.    Although in the ordinary course applicants receive permanent residency within a few months after an interview, Sang Hyun Lee has heard nothing further from immigration authorities since his December 2005 interview.

122.    Sang Hyun Lee suffered substantial damages as a result of OEIS's actions.  In addition to substantial financial loss, Sang Hyun Lee has suffered severe emotional distress inflicted by OEIS.

123.    Because of OEIS's actions, Sang Hyun Lee's future ability to apply for immigration benefits has been compromised as immigration authorities are likely to impute any fraud or wrongdoing to Sang Hyun Lee and he would be barred by INA 212(a)(6)(C) (misrepresentation ground of inadmissibility).

124.    Sang Hyun Lee has been robbed of his opportunity to lawfully become a citizen of the United States.

125.    Sang Hyun Lee came to the United States hoping to build a better life and sought to lawfully become a permanent resident.  Instead, his earnest and honest efforts have been thwarted by OEIS's deceit, causing great financial and emotional damage to Sang Hyun Lee.

**Kang Hyeon Seo**

126.    On or about February 14, 2001, Kang Hyeon Seo entered into a contract where he would pay $42,000 for OEIS' services.  On the day he signed the contract, he made a first payment of $10,500.   The contract and a certified copy thereof are attached to the Complaint as Exhibit A.

127.    The contract provided that "OEIS shall be responsible for preparation of all the documents associated with the employment of the applicant, labor certification application and immigration petition for alien worker promising to make the best effort and cooperate to have the green card process completed in the shortest period."

128.    Upon information and belief, OEIS knew that it would not make its "best effort". As described above, OEIS did not intend to provide Kang Hyeon Seo with a valid labor certification, was aware that their I-140 petitions were otherwise defective, or knew, or should have known, that its practices jeopardized the probability of success of the applications it filed.

129.     The contract further provided that "In the event it becomes impossible to enter into an employment agreement within 2 months from the date when the applicant submits the documents with the initial payment, the applicant shall be able to cancel the application process and request for refund of the entire amount of the application fee except $300."

130.     Kang Hyeon Seo fully performed on his contract with OEIS.

131.     In additional to making full payment, he paid all applicable filing fees.

132.     In or about March 2001, Mountaire extended a job offer, through OEIS, to Kang Hyeon Seo.  This job offer formed the basis of Mountaire's I-140 application submitted by OEIS naming Kang Hyeon Seo as the beneficiary.

133.     OEIS and Mountaire, through OIES, represented to Kang Hyeon Seo that use of the substitute labor certification, with its associated priority date, would result in Kang Hyeon Seo's swift receipt of legal permanent resident status.

134.     In fact, OEIS and Mountaire knew or should have known that their practices jeopardized the probability of success of the applications it filed.

135.     OEIS and Mountaire made the aforementioned knowing misrepresentations in order to induce Kang Hyeon Seo into entering into an agreement to pay $42,000 for OEIS's services.

136.     Upon information and belief, OEIS paid some consideration to Mountaire for its participation and cooperation.

137.     On or about March 15, 2001, OEIS submitted an I-140 to immigration authorities. Kang Hyeon Seo's I-140 was approved on or about October 18, 2001.

21

138.   Between 2001 and 2003, Kang Hyeon saved money to complete his payments to OEIS so that he could continue the green card application process.

139.   On or around April 22, 2004, OEIS submitted I-485s on behalf of Kang Hyeon Seo and his son to immigration authorities.

140.   Under the direction of OEIS, Kang Hyeon Seo relocated to Delaware to work for Mountaire in Delaware from September to December of 2004.

141.   On or around December 8, 2004, OEIS submitted I-485s on behalf of Kang Hyeon Seo's wife and step-daughter to immigration authorities.

142.   Under the direction of OEIS, Kang Hyeon Seo relocated again to Maryland to work for Allen Family Foods from January until July of 2005.

143.   OEIS represented to Kang Hyeon Seo that it was a "mistake" that he was working at Mountaire and told him he should have been working for Allen Family Foods.

144.   On or about March 2, 2005, Tricia Y. Matuszak, as Kang Hyeon Seo's representative, filed a Request for Portability pursuant to Section 106(c) of the American Competitiveness in the 21st Century Act (hereinafter "AC21") asking that Kang Hyeon Seo be granted permission to transfer the approved I-140 and his pending I-485 application to work at Allen's Family Foods.

145.   AC21 provides that an I-485 pending for 180 days or more could still be considered, notwithstanding a change of employer, so long as the alien worker has a bona fide offer of employment from a new employer in a same or similar occupation.  However, Section 106(c) of AC21 is not available in any case where the Form-140 has been revoked based on fraud.

146.   Kang Hyeon Seo did not learn about the Request for Portability until he was preparing for his interview.

147.   Kang Hyeon Seo was interviewed by immigration authorities on March 8, 2005.

148.   He was accompanied by Lee Hoon Koh, an alleged attorney engaged by OEIS.

149.   Kang Hyeon Seo had never met Lee Hoon Koh prior to the date of his interview with immigration authorities.

150.   Kang Hyeon Seo paid approximately $700 for Lee Hoon Koh's services.

151.   After some time passed and he did not hear about his interview results, Kang Hyeon Seo began to grow suspicious of OEIS.  He heard rumors in the Korean-American community that OEIS was investigated.  However, OEIS did not reveal anything about an investigation or its wrongdoing to Kang Hyeon Seo.

152.   Kang Hyeon Seo last spoke with OEIS in or about June of 2006.

153.   Although in the ordinary course applicants receive permanent residency within a few months after an interview, Kang Hyeon Seo has heard nothing further from immigration authorities since his March 2005 interview.

154.   Kang Hyeon Seo suffered substantial damages as a result of OEIS's actions.  In addition to substantial financial loss, Kang Hyeon Seo has suffered severe emotional distress inflicted by OEIS.

155.   Kang Hyeon Seo's wife has expressed disappointment in Kang Hyeon Seo for not being able to obtain a green card for her.  In addition, Kang Hyeon Seo must accept the reality that his children are going to grow up destined to be "illegal."  This is extremely distressing to Kang Hyeon Seo.

156.   Because of OEIS's actions, Kang Hyeon Seo's future ability to apply for immigration benefits has been compromised as immigration authorities are likely to impute any fraud or wrongdoing to Kang Hyeon Seo and he would be barred by INA 212(a)(6)(C) (misrepresentation ground of inadmissibility).

157.   Kang Hyeon Seo has been robbed of his opportunity to lawfully become a citizen of the United States.

158.   Kang Hyeon Seo came to the United States hoping to build a better life for himself and his family and sought to lawfully become a permanent resident.  Instead, his earnest and honest efforts have been thwarted by OEIS's deceit, causing great financial and emotional damage to Kang Hyeon Seo.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT
### (Plaintiffs v. Overseas Employment and Information Service, Inc.)

159.   Plaintiffs repeat and re-allege all of the allegations set forth above as if fully set forth in this paragraph.

160.   OEIS entered into contracts with each Plaintiff.  (One of the three contracts is attached as Exhibit A to the Complaint.)  Under these contracts, OEIS was to provide immigration services to the Plaintiffs – preparing all documentation relating to employment authorizations, immigration petitions and green cards – in consideration for payment of the contract price.

161.   The Plaintiffs fully performed under their contracts.  Each Plaintiff met the obligation to pay in full under the contracts.  Each Plaintiff received receipts for payments in full.  Each Plaintiff also paid all applicable filing fees.

162.   OEIS failed to meet its obligations under the contracts and therefore breached its contracts with Plaintiffs.  Upon information and belief, the contracts for Plaintiffs each included a "best efforts clause" which stated that OEIS promised "to make the best effort and cooperate to have the green card process completed within the shortest period of time."

163.   Upon information and belief, OEIS did not use its best efforts to complete the process within a short period of time because the company committed acts which jeopardized the success of Plaintiffs' immigration applications.

164.   Upon information and belief, OEIS intended to provide the Plaintiffs with invalid or otherwise fraudulent labor certifications or otherwise knew that the applications it would file would be insufficient.

165.   Upon information and belief, OEIS incompetently prepared immigration petitions and filings.  In addition, OEIS engaged in a number of other activities that further put Plaintiffs' applications at risk including basing entire immigration filings and petitions on labor certifications that it knew to be fraudulent or otherwise unable to support an application for adjustment of status.

166.   Each of the Plaintiffs has had trouble and delays in their application processes as a result of OEIS's sub-par efforts which constitute a breach of their contracts.

167.   OEIS's breach was continuing, but clearly dates from the letter it sent to Plaintiffs dated July 15, 2006, stating OEIS will no longer take action on their behalf.  Up until that point and throughout their representation of the Plaintiffs, OEIS and the individual Defendants continuously assured Plaintiffs that they were competently handling their applications and fraudulently concealed their breach.  As described above, Plaintiffs were deceived by Defendant

OEIS' material misstatements made repeatedly throughout their confidential relationship with each of the Plaintiffs with the purpose of preventing Plaintiffs from exercising their rights under and with respect to their Contracts.

168.    As a foreseeable result of the breach of contract, Plaintiffs lost substantial sums of money and lost the opportunity to legally adjust status.

169.    Defendant OEIS is therefore liable to Plaintiffs for their damages, including, but not limited to, the monetary losses and emotional distress resulting from the breach of contract in an amount to be determined at trial.

## SECOND CAUSE OF ACTION: RESCISSION
### (Plaintiffs v. Overseas Employment and Information Service, Inc.)

170.    Plaintiffs repeat and re-allege all of the allegations set forth above as if fully set forth in this paragraph.

171.    Defendant OEIS misrepresented the fact that it could acquire for Plaintiffs a valid labor certification, capable of supporting an application for adjustment of status to that of a Legal Permanent Resident.

172.    Defendant OEIS misrepresented its qualifications and abilities to perform the services it contracted to provide to the Plaintiffs.

173.    As described above, Defendant OEIS continuously and repeatedly misrepresented, the legal status of Plaintiffs' pending filings and applications submitted to immigration authorities.

174.   Defendant OEIS misrepresented that the labor certifications secured for the Plaintiffs would result in the approval of a valid visa petition and a grant of legal permanent resident status.

175.   Defendant OEIS misrepresented that it would "make the best effort and cooperate to have the green card process completed within the shortest period of time."

176.   These misrepresentations were material to the Plaintiffs' contracts with OEIS, which provided, in substantial part, that OEIS could and would secure valid labor certifications that could and would support applications for immigration benefits for Plaintiffs.

177.   Plaintiff relied upon OEIS's misrepresentations when it chose to enter into contracts with OEIS.

178.   Plaintiffs also relied upon OEIS's misrepresentations when they submitted various applications, petitions, appeals, and a motion to reconsider, along with necessary filing fees, to immigration authorities in accordance with OEIS's advice.

179.   Plaintiffs are therefore entitled to rescission of the aforementioned contracts with OEIS and return of the consideration provided by them under these contracts.

## THIRD CAUSE OF ACTION: UNJUST ENRICHMENT
### (Plaintiffs v. Overseas Employment and Information Service, Inc.)

180.   Plaintiffs repeat and re-allege all of the allegations set forth above as if fully set forth in this paragraph.

181.   Plaintiffs conferred a substantial benefit upon OEIS in the form of substantial amounts of money.

182.   Defendant OEIS knew of, appreciated, and retained such benefit.

183.   At no time did Defendant OEIS provide Plaintiffs anything of substantial or enduring value.

184.   Under the circumstances of OEIS's retention and acceptance of the benefit provided by Plaintiffs, equity and good conscience militate against permitting OEIS to retain the monies disbursed to it and require it to pay restitution to Plaintiff in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION: FRAUD
### (Plaintiffs v. Overseas Employment and Information Service, Inc.; Hyun Sook Yoo; Tricia Matuszak)

185.   Plaintiffs repeat and re-allege all of the allegations set forth above as if fully set forth in this paragraph.

186.   As described above, Defendant OEIS, through its officers, employees and agents, defrauded Plaintiffs by inducing the Plaintiffs, through numerous material acts and misrepresentations, to pay OEIS under the payment terms described in the contracts described above and attached as Exhibit A.

187.   As described above, Defendant OEIS knowingly misrepresented its qualifications and abilities to perform the services it contracted to provide to the Plaintiffs.

188.   As described above, Defendant OEIS continuously and repeatedly knowingly, or with reckless disregard for the truth, misrepresented the legal status of Plaintiffs' pending filings and applications submitted to immigration authorities.

189.   For example, Defendant OEIS represented that the labor certifications secured for the Plaintiffs existed, were valid and could and would result in the approval of a valid visa petition and a grant of legal permanent resident status.

190.   As described above, Defendant OEIS further misrepresented the reasons and circumstances surrounding the eventual rejection or revocation of submissions, applications, and filings made with immigration authorities on Plaintiffs' behalf.

191.   As described above, Defendants OEIS, Hyun Sook Yoo and Tricia Matuszak knowingly misrepresented to Do Yun Hwang, Sang Hyun Lee, and Kang Hyeon Seo that Tricia Matuszak was an attorney.

192.   In addition, upon information and belief, in its contract with each Plaintiff, Defendant OEIS represented that that it would use its "best efforts" in performing the terms of its contract with Plaintiff.

193.   Upon information and belief, at the time it contracted with the Plaintiffs, OEIS had no intention "to make the best effort and cooperate to have the green card process completed within the shortest period of time." Indeed, it knew that it would not use its best effort because it knew its practices jeopardized the probability of success of the applications it filed. Therefore, OEIS misrepresented its present intention to perform on the contract into which it induced Plaintiffs to enter.

194.   The aforementioned knowing misrepresentations induced Plaintiffs to pay Defendant OEIS $28,000.00 or more for its proffered "services" and to pay significant filing fees to immigration authorities.

195.     The aforementioned knowing misrepresentations also induced Plaintiffs to uproot themselves from their home and family in New York State to relocate to Maryland and Delaware to work for the employer Defendants.

196.     Defendant OEIS made these material misrepresentations for the purpose of inducing Plaintiffs to pay it substantial fees for its proffered "services" and to induce them to perform work for the Meat Processing Defendants.

197.     Plaintiffs were deceived by Defendant OEIS's material misstatements and justifiably relied on them when they agreed to pay and paid OEIS significant sums for its proffered "services."

198.     Plaintiffs were deceived by Defendant OEIS's material misstatements and justifiably relied on them when, repeatedly throughout its relationship with each of the Plaintiffs, OEIS assured Plaintiffs that it could secure immigration benefits for them.

199.     As a foreseeable result of the fraud, Plaintiffs lost substantial sums of money and lost the opportunity to legally adjust status.

200.     Defendant OEIS is therefore liable to Plaintiffs for their damages, including, but not limited to, the monetary losses and emotional distress resulting from the fraud in an amount to be determined at trial.

201.     Defendant OEIS is also liable for punitive damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION: FRAUD
#### (Sang Hyun Lee v. Allen Family Foods, Inc.)

202.     Plaintiffs repeat and re-allege all of the allegations set forth above as if fully set forth in this paragraph.

203.    Allen Family Foods participated in OEIS's fraud, as described above.

204.    Allen Family Foods, knew or should have known the status of the labor certification transferred to Sang Hyun Lee as it was, under federal law, responsible for applying to the Department of Labor for such certifications.

205.    Allen Family Foods, knew or should have known that the labor certifications would be unlikely to result in the grant of legal permanent status to Sang Hyun Lee.

206.    Nevertheless, Allen Family Foods, made material misrepresentations regarding the status of labor certifications, in communications to immigration authorities and also in communications with Plaintiffs, including, but not limited to, the job offer provided Sang Hyun Lee.

207.    Upon information and belief, these misrepresentations were made to induce Sang Hyun Lee to enter into the contracts they did with OEIS.

208.    Allen Family Foods' actions caused extensive damage to Sang Hyun Lee.

209.    Sang Hyun Lee was deceived by Allen Family Foods' material misstatements and justifiably relied on them as he continued to work for them while anxiously awaiting his green card interview.

210.    As a foreseeable result of the fraud, Sang Hyun Lee lost substantial sums of money and lost the opportunity to legally adjust status.

211.    Allen Family Foods is therefore liable to Sang Hyun Lee for his damages, including, but not limited to, the monetary losses and emotional distress resulting from the fraud in an amount to be determined at trial.

212.   Allen Family Foods is further liable for punitive damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION: CONSPIRACY TO DEFRAUD
(Plaintiffs v. Overseas Employment and Information Service, Inc., Charles Han Yoo, Hyun Sook Yoo, Tricia Matuszak; Allen Family Foods; Mountaire Farms of Delaware, Inc.)

213.   Plaintiffs repeat and re-allege all of the allegations set forth above as if fully set forth in this paragraph.

214.   Defendants OEIS and the Meat Processing Defendants agreed to and shared the common objective of inducing Plaintiffs to pay OEIS substantial sums of money for its proffered "services."

215.   Defendant OEIS and the Meat Processing Defendants agreed to use unlawful means, namely, participate in the sale of fraudulent labor certifications to Plaintiffs, in order to accomplish their objective.

216.   Each of OEIS, Allen Family Foods, and Empire Kosher performed acts in furtherance of the conspiracy including, but not limited to, submitting or allowing to be submitted on their behalf documents to federal authorities, engaging in material misrepresentations to federal authorities and the Plaintiffs, and employing Plaintiffs.

217.   OEIS and the Meat Processing Defendants knew, or should have known, that Defendant OEIS could not and did not intend to provide the services described in its contracts with Plaintiffs.

218.   They nevertheless induced Plaintiffs to turn over large sums of money to OEIS and to rely on OEIS's services in securing legal permanent resident status.

219.    Upon information and belief, OEIS, in turn. made payments or provided other substantial consideration to each of the Meat Processing Defendants.

220.    The fraud committed in the course of the conspiracy caused significant damages to Plaintiffs.

221.    As a result, OEIS Defendants and the Meat Processing Defendants are jointly and severally liable to the Plaintiffs for damages resulting from their conspiracy to defraud, including, but not limited to, the monetary losses and emotional distress resulting from the conspiracy to defraud in an amount to be determined at trial.

222.    OEIS and the Meat Processing Defendants are further liable for punitive damages in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION: AIDING AND ABETTING FRAUD
(Plaintiffs v. Allen Family Foods, Inc.; Mountaire Farms of Delaware, Inc.)

223.    Plaintiffs repeat and re-allege all of the allegations set forth above as if fully set forth in this paragraph.

224.    Plaintiffs were defrauded by Defendant OEIS when, as described above, OEIS knowingly and intentionally made material misrepresentations for the purpose of inducing Plaintiffs to pay substantial sums to OEIS for its proffered "services."

225.    Allen Family Foods and Mountaire and had actual or constructive knowledge of Defendant OEIS's fraudulent misrepresentations as, upon information and belief, they knew, or should have known, the true status of the labor certifications and other documents intended to support Plaintiffs' applications for adjustment of status.

226.    The Meat Processing Defendants encouraged, incited, aided, abetted and/or provided substantial assistance to the fraud by making various representations to federal authorities, or allowing Defendant OEIS to make representations on their behalf, which jeopardized Plaintiffs' applications for adjustment to legal permanent resident status.

227.    As a result of the Meat Processing Defendants' acts, Plaintiffs suffered significant economic losses and emotional distress.

228.    The Meat Processing Defendants are therefore liable to Plaintiffs for their damages, including, but not limited to, the monetary losses and emotional distress resulting from the fraud in an amount to be determined at trial.

229.    The Meat Processing Defendants are further liable for punitive damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION: UNFAIR AND DECEPTIVE PRACTICES**
(Plaintiffs v. Overseas Employment and Information Service, Inc.; Hyun Sook Yoo; Tricia Matuszak)

230.    Plaintiffs repeat and re-allege all of the allegations set forth above as if fully set forth in this paragraph.

231.    OEIS, Hyun Sook Yoo, and Tricia Matuszak are in the business of billing and collecting fees from consumers of immigration services.

232.    OEIS, Hyun Sook Yoo, and Tricia Matuszak made oral and written representations that would have materially misled a reasonable consumer to believe that their conduct, including the sale of fraudulent labor certifications, could result in the approval of a valid visa petition and a grant of legal permanent status.

233.   OEIS, Hyun Sook Yoo, and Tricia Matuszak made oral and written representations that would have materially misled a reasonable consumer about the value of its proffered "services".

234.   On the contrary, OEIS, Hyun Sook Yoo, and Tricia Matuszak's conduct jeopardized the success of the applications it filed.

235.   OEIS, Hyun Sook Yoo, and Tricia Matuszak's acts and failures to act were oriented at consumers, including consumers in New York.

236.   Plaintiffs were consumers on all relevant dates in this action.

237.   OEIS, Hyun Sook Yoo, and Tricia Matuszak's representations did in fact materially mislead the Plaintiffs.

238.   As a result of OEIS, Hyun Sook Yoo, and Tricia Matuszak's representations, Plaintiffs paid OEIS exorbitant fees for services, filing fees, and relocation costs, incurred harm to their ability to file future immigration applications, and incurred other costs including, but not limited to, emotional distress and attorneys fees in an amount to be determined at trial.

239.   OEIS, Hyun Sook Yoo, and Tricia Matuszak's acts and failures to act constitute unfair and deceptive acts or practices in the conduct of business, trade or commerce, as those terms are defined and construed under N.Y. Gen. Bus. Law § 349(a).

240.   OEIS, Hyun Sook Yoo, and Tricia Matuszak's acts and failures to act violate N.Y. Gen. Bus. Law § 349 et. seq. (Consumer Protection from Deceptive Practices Act).

241.   Upon information and belief, OEIS, Hyun Sook Yoo, and Tricia Matuszak's acts and failures to act as described above were willful and knowing.

242.    Accordingly, Plaintiffs are entitled to damages and injunctive relief in an amount to be determined at trial.

## NINTH CAUSE OF ACTION: CONSTRUCTIVE FRAUD
### (Plaintiffs v. Overseas Employment and Information Service, Inc.; Hyun Sook Yoo; Tricia Matuszak)

243.    Plaintiffs repeat and re-allege all of the allegations set forth above as if fully set forth in this paragraph.

244.    As a result of its representation of Plaintiffs with respect to filings, applications, petitions, and motions pending before federal immigration authorities, OEIS, Hyun Sook Yoo, and Tricia Matuszak owed a duty to Plaintiffs arising out a relationship of trust and confidence.

245.    As a result, Plaintiffs justifiably believed that OEIS would not act in a manner adverse or inconsistent with their interest or welfare.

246.    OEIS, Hyun Sook Yoo, and Tricia Matuszak violated this belief by recklessly and incompetently handling of Plaintiffs' filings, applications, petitions, appeals, and motions then pending before immigration authorities.

247.    As a result, OEIS, Hyun Sook Yoo, and Tricia Matuszak are liable to the Plaintiffs for rescission of the contracts and/or for damages resulting from its constructive fraud, including, but not limited to, the monetary losses and emotional distress resulting from the constructive fraud in an amount to be determined at trial.

## TENTH CAUSE OF ACTION: UNFAIR AND DECEPTIVE PRACTICES
### (Plaintiffs v. Overseas Employment and Information Service, Inc.; Hyun Sook Yoo; Tricia Matuszak)

248.    Plaintiffs repeat and re-allege all of the allegations set forth above as if fully set forth in this paragraph.

249.    OEIS, Hyun Sook Yoo, and Tricia Matuszak are the business of billing and collecting fees from consumers of immigration services.

250.    OEIS, Hyun Sook Yoo, and Tricia Matuszak made oral and written representations that would have materially misled a reasonable consumer to believe that they were qualified to provide immigration legal services, including providing advice as to Plaintiffs and their family members' legal eligibility for adjustment of status and as to the legal regularity of documents OEIS submitted to immigration authorities on Plaintiffs' behalf.

251.    Upon information and belief, OEIS, Hyun Sook Yoo, and Tricia Matuszak were not qualified to provide such immigration legal services.

252.    Upon information and belief, the immigration legal services that OEIS, Hyun Sook Yoo, and Tricia Matuszak provided constituted the unauthorized practice of law.

253.    OEIS, Hyun Sook Yoo, and Tricia Matuszak's acts and failures to act were oriented at consumers, including consumers in New York.

254.    Plaintiffs were consumers on all relevant dates in this action.

255.    OEIS, Hyun Sook Yoo, and Tricia Matuszak's representations did in fact materially mislead the Plaintiffs.

256.    As a result of OEIS, Hyun Sook Yoo, and Tricia Matuszak's representations, Plaintiffs placed their utmost confidence in OEIS' services, paid OEIS exorbitant fees for services, filing fees, and relocation costs, incurred harm to their ability to file future immigration

applications, and incurred other costs including, but not limited to, emotional distress and attorneys fees in an amount to be determined at trial.

257.   OEIS, Hyun Sook Yoo, and Tricia Matuszak's acts and failures to act constitute unfair and deceptive acts or practices in the conduct of business, trade or commerce, as those terms are defined and construed under N.Y. Gen. Bus. Law § 349(a).

258.   OEIS, Hyun Sook Yoo, and Tricia Matuszak's acts and failures to act violate N.Y. Gen. Bus. Law § 349 et. seq. (Consumer Protection from Deceptive Practices Act).

259.   Upon information and belief, OEIS, Hyun Sook Yoo, and Tricia Matuszak's acts and failures to act as described above were willful and knowing.

260.   Accordingly, Plaintiffs are entitled to damages and injunctive relief in an amount to be determined at trial.

### ELEVENTH CAUSE OF ACTION:
### UNFAIR AND DECEPTIVE PRACTICES
(Plaintiffs v. Overseas Employment and Information Service, Inc.)

261.   Plaintiffs repeat and re-allege all of the allegations set forth above as if fully set forth in this paragraph.

262.   Defendant OEIS is in the business of billing and collecting fees from consumers of immigration services.

263.   Upon information and belief, Defendant is an immigration assistance provider as those terms are defined under N.Y. Gen. Bus. Law § 460-a.

264.   Upon information and belief, Defendant did not include conspicuous warnings that OEIS did not employ attorneys licensed to practice law or accredited representatives that

could provide legal advice or accept fees for legal advice in newspaper advertisements circulated in New York, in violation of N.Y. Gen. Bus. Law § 460-d.

265. Upon information and belief, Defendant, through its agents, gave legal advice, failed to inform the Plaintiffs of documents filed with immigration authorities, failed to provide Plaintiffs with copies of documents filed with immigration authorities, made direct and/or indirect misrepresentations to Plaintiffs, and made promises to the Plaintiffs without a basis in fact for such representations, all in violation of N.Y. Gen. Bus. Law § 460-e.

266. Defendant's acts and failures to act were oriented at consumers, including consumers in New York.

267. Plaintiffs were consumers on all relevant dates in this action.

268. As a result of Defendant's acts and failures to act, Plaintiffs incurred serious harm to their ability to file future immigration applications and incurred other costs including, but not limited to, emotional distress, attorneys fees, and other costs in an amount to be determined at trial.

269. Defendant's acts and failures to act constitute unfair and deceptive acts or practices in the conduct of business, trade or commerce, as those terms are defined and construed under N.Y. Gen. Bus. Law § 349(a).

270. Defendant's acts and failures to act violate N.Y. Gen. Bus. Law § 349 et. seq. (Consumer Protection from Deceptive Practices Act).

271. Upon information and belief, Defendant's acts and failures to act as described above were willful and knowing.

272.    Accordingly, Plaintiffs are entitled to damages and injunctive relief in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION: VIOLATION OF MARYLAND IMMIGRATION CONSULTANT ACT
### (Plaintiffs v. Overseas Employment and Information Service, Inc.)

273.    Plaintiffs repeat and re-allege all of the allegations set forth above as if fully set forth in this paragraph.

274.    Upon information and belief, Defendant was an immigration consultant in Maryland on or after October 1, 2005, as that terms is defined under Md. Com. Law § 14-3301.

275.    Upon information and belief, Defendant, through its agents, gave legal advice, made misrepresentations to influence, persuade, or encourage Plaintiffs to continue to place their confidence in Defendant's services, and failed to provide copies of documents paid for by Plaintiffs at the Plaintiff's request, all in violation of Md. Com. Law § 14-3303.

276.    In accord with Md. Com. Law § 14-3304, Plaintiffs are entitled to recover up to three times the compensation paid to the Defendant plus reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(A)    upon Plaintiffs' first cause of action, Plaintiffs demand judgment from Defendant OEIS in the amount of $416,000 or greater for Do Yun Hwang, $429,000 or greater for Sang Hyun Lee, and $337,000 or greater for Kang Hyeon Seo to be determined by the trier of fact as and for actual damages; and $38,000 or greater for Do Yun Hwang, $38,000 or greater for Sang Hyun Lee, and $82,000 or

greater for Kang Hyeon Seo to be determined by the trier of fact as and for compensatory damages.

(B)    upon Plaintiffs' second cause of action, Plaintiffs demand judgment from Defendant OEIS in the amount of $28,000 or greater for Do Yun Hwang, $28,000 or greater for Sang Hyun Lee, and $42,000 or greater for Kang Hyeon Seo to be determined by the trier of fact.

(C)    upon Plaintiffs' third cause of action, Plaintiffs demand judgment from Defendant OEIS in the amount of $28,000 or greater for Do Yun Hwang, $28,000 or greater for Sang Hyun Lee, and $42,000 or greater for Kang Hyeon Seo to be determined by the trier of fact.

(D)    upon Plaintiffs' fourth cause of action, Plaintiffs demand judgment, jointly and severally, from OEIS, Hyun Sook Yoo, and Tricia Matuszak, in the amount of $416,000 or greater for Do Yun Hwang, $429,000 or greater for Sang Hyun Lee, and $337,000 or greater for Kang Hyeon Seo to be determined by the trier of fact as and for actual damages; and $38,000 or greater for Do Yun Hwang, $38,000 or greater for Sang Hyun Lee, and $82,000 or greater for Kang Hyeon Seo to be determined by the trier of fact as and for compensatory damages; and $500,000 or greater for each Plaintiff to be determined by the trier of fact as and for punitive damages.

(E)    upon Plaintiffs' fifth cause of action Plaintiff Sang Hyun Lee demands judgment from Allen Family Foods in the amount of $429,000 or greater as and for actual

damages; $56,000 or greater as and for compensatory damages; and $500,000 or greater to be determined by the trier of fact as and for punitive damages.

(F)     upon Plaintiffs' sixth cause of action, Plaintiffs demand judgment, jointly and severally, from the OEIS Defendants and the Meat Processing Defendants, in the amount of $416,000 or greater for Do Yun Hwang, $429,000 or greater for Sang Hyun Lee, and $337,000 or greater for Kang Hyeon Seo to be determined by the trier of fact as and for actual damages; and $38,000 or greater for Do Yun Hwang, $38,000 or greater for Sang Hyun Lee, and $82,000 or greater for Kang Hyeon Seo to be determined by the trier of fact as and for compensatory damages; and $500,000 or greater for each Plaintiff to be determined by the trier of fact as and for punitive damages.

(G)     upon Plaintiffs' seventh cause of action, Plaintiffs demand judgment, jointly and severally, from the Meat Processing Defendants, in the amount of $416,000 or greater for Do Yun Hwang, $429,000 or greater for Sang Hyun Lee, and $337,000 or greater for Kang Hyeon Seo to be determined by the trier of fact as and for actual damages; and $38,000 or greater for Do Yun Hwang, $38,000 or greater for Sang Hyun Lee, and $82,000 or greater for Kang Hyeon Seo to be determined by the trier of fact as and for compensatory damages; and $500,000 or greater for each Plaintiff to be determined by the trier of fact as and for punitive damages.

(H)     upon Plaintiffs' eighth cause of action, Plaintiffs demand judgment, jointly and severally, from OEIS, Hyun Sook Yoo, and Tricia Matuszak, in the amount of $416,000 or greater for Do Yun Hwang, $429,000 or greater for Sang Hyun Lee,

and $337,000 or greater for Kang Hyeon Seo to be determined by the trier of fact as and for actual damages; and $38,000 or greater for Do Yun Hwang, $38,000 or greater for Sang Hyun Lee, and $82,000 or greater for Kang Hyeon Seo to be determined by the trier of fact as and for compensatory damages.

(I)  upon Plaintiffs' ninth cause of action, Plaintiffs demand judgment, jointly and severally, from OEIS, Hyun Sook Yoo, and Tricia Matuszak, in the amount of $416,000 or greater for Do Yun Hwang, $429,000 or greater for Sang Hyun Lee, and $337,000 or greater for Kang Hyeon Seo to be determined by the trier of fact as and for actual damages; and $38,000 or greater for Do Yun Hwang, $38,000 or greater for Sang Hyun Lee, and $82,000 or greater for Kang Hyeon Seo to be determined by the trier of fact as and for compensatory damages.

(J)  upon Plaintiffs' tenth cause of action, Plaintiffs demand judgment, jointly and severally, from OEIS, Hyun Sook Yoo, and Tricia Matuszak, in the amount of $416,000 or greater for Do Yun Hwang, $429,000 or greater for Sang Hyun Lee, and $337,000 or greater for Kang Hyeon Seo to be determined by the trier of fact as and for actual damages; and $38,000 or greater for Do Yun Hwang, $38,000 or greater for Sang Hyun Lee, and $82,000 or greater for Kang Hyeon Seo to be determined by the trier of fact as and for compensatory damages.

(K)  upon Plaintiffs' eleventh cause of action, Plaintiffs demand judgment from Defendant OEIS in the amount of $416,000 or greater for Do Yun Hwang, $429,000 or greater for Sang Hyun Lee, and $337,000 or greater for Kang Hyeon Seo to be determined by the trier of fact as and for actual damages; and $38,000

or greater for Do Yun Hwang, $38,000 or greater for Sang Hyun Lee, and $82,000 or greater for Kang Hyeon Seo to be determined by the trier of fact as and for compensatory damages.

(L)     upon Plaintiffs' twelfth cause of action, Plaintiffs demand judgment from Defendant OEIS in the amount of up to $96,000 for Do Yun Hwang, up to $96,000 for Sang Hyun Lee, and up to $138,000 for Kang Hyeon Seo, equal to three times the compensation paid to Defendant OEIS and attorneys fees, pursuant to Md. Com. Law § 14-3304;

(M)     for injunctive relief pursuant to NY. Gen. Bus. Law § 349;

(N)     for the attorneys fees and costs incurred by Plaintiffs associated with bringing this action; and

(O)     for such other and further relief as this Court may deem just, equitable, and proper.

745187.01-D.C. Server 1A - MSW

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by this Complaint.


Dated:  Washington, DC
        February 26, 2007

                                        Respectfully submitted,

                                        By:   _____
                                        Donald P. Salzman, #16501
                                        1440 New York Avenue, N.W.
                                        Washington, D.C. 20005
                                        (202) 371-7000

                                        Anika Singh
                                        Urban Justice Center
                                        666 Broadway
                                        New York, NY 10012
                                        (646) 459-3013

                                        Vaughn C. Williams
                                        Martha Jane Johnstone
                                        4 Times Square
                                        New York, NY 10036
                                        (212) 735-3000