## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DO YUN HWANG, *et al.*,

        Plaintiffs,

    v.

OVERSEAS EMPLOYMENT AND
INFORMATION SERVICE, INC. d/b/a/ EBI,
INC., *et al.*,

        Defendants.

Case No. 07 CV 481 (PJM)

**FILED UNDER SEAL**

## TRICIA MATUSZAK'S MEMORANDUM
## OF LAW IN SUPPORT OF MOTION TO DISMISS

Sara Z. Moghadam (Bar No. 14218)
Nancy Luque
Steven K. Barentzen
DLA PIPER US LLP
1200 Nineteenth Street, NW
Washington, DC  20036-2430
Telephone:    202.861.3900
Facsimile:    202.223.2085

*Attorneys for Tricia Matuszak*

March 30, 2007

## TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT** ............................................................................1

**PLAINTIFFS' FACTUAL ALLEGATIONS** .......................................................4

    A.    DO YUN HWANG'S ALLEGATIONS ................................................5

    B.    SANG HYUN LEE'S ALLEGATIONS .................................................6

    C.    KANG HYEON SEO'S ALLEGATIONS...............................................7

    D.    ALLEGATIONS COMMON TO ALL PLAINTIFFS............................8

**ARGUMENT** ...........................................................................................................9

    I.    PLAINTIFFS' CLAIMS ARE GOVERNED BY NEW YORK LAW ................9

    II.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ................................................................10

        A.    The Standard Governing Motions To Dismiss ..........................................10

        B.    Plaintiffs Have Failed To State a Fraud Claim Against Tricia Matuszak.......................................................................................................11

        C.    Plaintiffs Also Have Failed To State a Conspiracy to Defraud Claim Against Tricia Matuszak ...............................................................13

        D.    Plaintiffs Have Failed To State an Unfair and Deceptive Practices Claim Against Tricia Matuszak ................................................15

        E.    Plaintiffs Have Failed To State a Constructive Fraud Claim Against Tricia Matuszak ........................................................................17

**CONCLUSION** .....................................................................................................19

# TABLE OF AUTHORITIES

Page

## CASES

*ADCS, Inc. v. Kimbrough*, 30 Fed. Appx. 225 (4th Cir. 2002) ...................................................... 19

*Alexander & Alexander, Inc. v. B. Dixon Evander & Assoc., Inc.*,
    650 A.2d 260 (Md. 1994) ................................................................................................... 15

*American Chiropractic Assoc. Inc. v. Trigon Healthcare, Inc.*,
    367 F.3d 212 (4th Cir. 2004) ............................................................................................. 14

*Andrews v. Fitzgerald*,
    823 F. Supp. 356 (M.D.N.C. 1993) ................................................................................... 10

*Bank Realty, Inc. v. Practical Management Tech., Inc.*,
    1991 WL 97490 (4th Cir. 1991) ........................................................................................ 14

*Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.*,
    601 F. Supp. 770 (S.D.N.Y. 1985) .................................................................................... 18

*Boley v. Pineloch Assoc., Ltd.*,
    700 F. Supp. 673 (S.D.N.Y. 1988) .................................................................................... 18

*Brackett v. Griswold*,
    20 N.E. 376 (N.Y. 1889) ................................................................................................... 14

*Brownstone Inv. Group, LLC v. Levey*,
    468 F. Supp. 2d 654 (S.D.N.Y. 2007) ............................................................................... 15

*Burrell v. State Farm & Cas. Co.*,
    226 F. Supp. 2d 427 (S.D.N.Y. 2002) ............................................................................... 18

*Callahan v. Gutowski*,
    111 A.D.2d 464 (N.Y. App. Div. 1985) ............................................................................ 13

*Calvin Klein Trademark Trust v. Wachner*,
    123 F. Supp. 2d 731 (S.D.N.Y. 2000) ............................................................................... 18

*Citicorp Int'l Trading Co., Inc. v. Western Oil & Refining Co., Inc.*,
    790 F. Supp. 428 (S.D.N.Y. 1992) ...................................................................................... 9

*Damazo v. Wahby*,
    270 A.2d 814 (Md. 1970) ................................................................................................... 14

## TABLE OF AUTHORITIES
(continued)

Page

*Danahy v. Meese*,
  446 N.Y.S.2d 611 (N.Y. App. Div. 1981)........................................................13

*Di Vittorio v. Equidyne  Extractive Indus., Inc.*,
  822 F.2d 1242 (2d Cir. 1987) .........................................................................10

*Edwards v. City of Goldsboro*,
  178 F.3d 231 (4th Cir. 1999) ..........................................................................10

*Fitzgerald v. Field*,
  1999 WL 1021568 (S.D.N.Y. 1999) ...............................................................15

*Gallant v. Kanterman*,
  603 N.Y.S.2d 315 (N.Y. App. Div. 1993)........................................................14

*Goshen v. Mutual Life Ins. Co. of New York*,
  774 N.E.2d 1190 (N.Y. 2002) .........................................................................15

*Grove Press, Inc. v. Angleton*,
  649 F.2d 121 (2d Cir. 1981) ...........................................................................15

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999) ..........................................................................10

*Hill v. Brush Engineered Materials, Inc.*,
  383 F. Supp. 2d 814 (D. Md. 2005).................................................................15

*In re Ames Dep't Stores, Inc.*,
  274 B.R. 600 (Bankr. S.D.N.Y. 2002)..............................................................18

*In re Harvard Knitwear, Inc.*,
  153 B.R. 617 (Bankr. E.D.N.Y. 1993) .............................................................14

*In re Rezulin Products Liability Litig.*,
  392 F. Supp. 2d 597 (S.D.N.Y. 2005) ..............................................................15

*JP Morgan Chase Bank v. Winnick*,
  350 F. Supp. 2d 393 (S.D.N.Y. 2004) ..............................................................12

*Jin v. EBI, Inc.*,
  2006 WL 3335102 (E.D.N.Y. 2006) ..................................................................2

*Johnson v. Oroweat Foods Co.*,
  785 F.2d 503 (4th Cir. 1986) .............................................................................9

## TABLE OF AUTHORITIES
(continued)

Page

*Juman v. Louise Wise Svcs.*,
663 N.Y.S.2d 483 (N.Y. Sup. Ct. 1997).............................................................................9

*Kaye v. Grossman*,
202 F.3d 611 (2d Cir. 2000) ...........................................................................................11

*Klembczyk v. Di Nardo*,
705 N.Y.S.2d 743 (N.Y. App. Div. 1999).........................................................................18

*Kregos v. Associated Press*,
3 F.3d 656 (2d Cir. 1993) .................................................................................................9

*Lab. Corp. of Am. v. Hood*,
911 A.2d 841 (Md. 2006) ..................................................................................................9

*Labram v. Havel*,
43 F.3d 918 (4th Cir. 1995) .............................................................................................10

*Lava Trading, Inc. v. Hartford Fire Ins. Co.*,
326 F. Supp. 2d 434 (S.D.N.Y. 2004) .......................................................................16, 17

*Lee, et al. v. EBI, Inc., et al.*,
Case No. 06 CV 3294 (RWT) ...........................................................................................2

*Manikhi v. Mass Transit Admin.*,
758 A.2d 95 (Md. 2000)...................................................................................................14

*Manning v. Utilities Mut. Ins. Co., Inc.*,
254 F.3d 387 (2d Cir. 2001) ...........................................................................................11

*Marine Midland Bank v. Russo Produce Co.*,
50 N.Y.2d 31 (1980).........................................................................................................12

*Martens Chevrolet, Inc. v. Seney*,
439 A.2d 534 (Md. 1982) .................................................................................................11

*Monte v. Ernst & Young LLP*,
330 F. Supp. 2d 350 (S.D.N.Y. 2004) .............................................................................14

*Nassau County Employee "L" v. County of Nassau*,
345 F. Supp. 2d 293 (E.D.N.Y. 2004).............................................................................14

## TABLE OF AUTHORITIES
(continued)

Page

*Nechis v. Oxford Health Plans, Inc.*,
    421 F.3d 96 (2d Cir. 2005) ............................................................................................. 10

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    647 N.E.2d 741 (N.Y. 1995) ........................................................................................... 16

*Oursler v. Women's Interart Ctr., Inc.*,
    566 N.Y.S.2d 295 (N.Y. App. Div. 1991) ....................................................................... 18

*People by Abrams v. Apple Health & Sports Clubs, Ltd., Inc.*,
    80 N.Y.2d 803 (N.Y. 1992) ............................................................................................ 11

*Petrello v. White*,
    412 F. Supp. 2d 215 (E.D.N.Y. 2006) ............................................................................ 17

*Quinn v. Nassau County Police Dep't*,
    53 F. Supp. 2d 347 (E.D.N.Y. 1999) .............................................................................. 14

*Scheve v. McPherson*,
    408 A.2d 1071 (Md. 1979) .............................................................................................. 18

*Small v. Lorillard*,
    720 N.E.2d 892 (N.Y. 1999) ........................................................................................... 13

*State of New York v. Dairylea Coop., Inc.*,
    570 F. Supp. 1213 (S.D.N.Y. 1983) ............................................................................... 14

*Tedrow v. Deskin*,
    290 A.2d 799 (Md. 1972) ............................................................................................... 12

*Teller v. Bill Hayes, Ltd.*,
    630 N.Y.S.2d 769 (N.Y. App. Div. 1995) ....................................................................... 16

*Vitolo v. Mentor H/S, Inc.*,
    426 F. Supp. 2d 28 (E.D.N.Y. 2006) .............................................................................. 16

*Wang Labs., Inc. v. Burts*,
    612 F. Supp. 441 (D. Md. 1984) ..................................................................................... 11

*Wiener v. Napoli*,
    760 F. Supp. 278 (E.D.N.Y. 1991) ................................................................................. 11

*Young v. City of Mount Ranier*,
    238 F.3d 567 (4th Cir. 2001) .......................................................................................... 10

## TABLE OF AUTHORITIES
(continued)

Page

## STATUTES

Fed. R. Civ. P. 9(b) ................................................................................................................ 10, 11

N.Y. Gen. Bus. Law 349(a) .............................................................................................. 15, 16, 17

Federal of Rule of Civil Procedure 20 .............................................................................................. 8

Federal Rule of Civil Procedure 12(b)(6) .................................................................................... 1, 10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DO YUN HWANG, *et al.*,

        Plaintiffs,

v.

OVERSEAS EMPLOYMENT AND
INFORMATION SERVICE, INC. d/b/a/ EBI,
INC., *et al.*,

        Defendants.

Case No. 07 CV 481 (PJM)

**FILED UNDER SEAL**

## TRICIA MATUSZAK'S MEMORANDUM
## OF LAW IN SUPPORT OF MOTION TO DISMISS

Tricia Matuszak, by and through undersigned counsel, respectfully submits this memorandum of law in support of her motion to dismiss all of the claims asserted against her in this action pursuant to Federal Rule of Civil Procedure 12(b)(6) because each fails to state a claim.

### PRELIMINARY STATEMENT

Tricia Matuszak is alleged to be a former shareholder, officer and/or employee of Defendant Overseas Employment and Information Service, Inc., a/k/a, EBI, Inc. ("EBI"). Prior to ceasing operations last year, EBI was a highly respected and reputable employment services agency that specialized in assisting foreign nationals in obtaining employment and employer sponsorship for employment based immigration visas in this country. Over the thirty seven years it was in business, EBI

assisted thousands of clients in obtaining employment in and immigrating legally to
the United States.[1]

Plaintiffs are three South Korean nationals and former clients of EBI. Plaintiffs each
hired EBI to obtain for them offers of employment to work in the United States and approved
immigrant visa petitions, Form I-140's. Plaintiffs concede that EBI performed under their
respective contracts with EBI and obtained for them job offers and approved immigrant visa
petitions. Accordingly, each Plaintiff paid EBI in full.

After obtaining approved Form I-140's for each Plaintiff, EBI also filed on each
Plaintiffs' behalf a Form I-485 application to adjust their status to permanent legal resident. EBI
filed Forms I-485 for each Plaintiff, but there is no provision in any of the contracts promising or
guaranteeing any Plaintiff that he or she would obtain permanent legal status in the United
States, and payment under the contracts was not dependant upon Plaintiffs obtaining permanent
residency. Each Plaintiff has been interviewed by USCIS and each of their applications for
permanent residency is under review by the United States Customs and Immigration Services
("USCIS").

Apparently dissatisfied with the length of time it is taking USCIS to process their
applications -- a matter completely out of EBI's control -- Plaintiffs each now attempt to
rewrite their respective contracts and belatedly argue that EBI promised them "green

---

[1] Prior to this lawsuit and the other related lawsuit filed in this Court, *Lee, et al. v. EBI, Inc., et al.*, Case No. 06 CV 3294 (RWT), Tricia Matuszak and EBI had only once before been named as defendants in a lawsuit. *See Jin v. EBI, Inc.*, 2006 WL 3335102 (E.D.N.Y. 2006). The claims in that lawsuit have been dismissed, although plaintiffs filed an amended complaint which defendants intend to move to dismiss. Shortly after filing this complaint, plaintiffs sought to consolidate this case with the Lee Action. Tricia Matuszak is concurrently opposing the motion to consolidate and seeking to sever the actions.

cards."[2]  Plaintiffs, funded by *pro bono* counsel at Skadden Arps, have improperly joined together hoping to induce a windfall settlement and recklessly filed dressed-up contract claims -- *i.e.*, for fraud, conspiracy, unjust enrichment, and deceptive trade practices -- against each Defendant, regardless of whether they had any factual basis for doing so.

Tricia Matuszak is a victim of Plaintiffs' shotgun approach to this litigation. Her alleged liability is premised entirely on the allegation that she is a former officer, employee and/or shareholder of EBI. Not one of the Plaintiffs alleges a single representation made to them by Ms. Matuszak, much less a false representation, and none of the Plaintiffs allege that she conspired to defraud Plaintiffs or took any action in furtherance of such a conspiracy. Moreover, none of the Plaintiffs alleges to have suffered any damages. Plaintiffs all admit that their applications for adjustment of status to permanent legal resident are all still pending, that they already have had their interviews with the USCIS, and are waiting for USCIS to process the applications. Unless and until those pending applications are denied, and there is no evidence that they will be, Plaintiffs have not suffered any damage.

Nevertheless, Plaintiffs have sued Ms. Matuszak for fraud, conspiracy and deceptive trade practices and sought hundreds of thousands of dollars of damages against her. Plaintiffs' claims are baseless and should be dismissed.

---

[2] Plaintiffs' complaints of the USCIS's delay with the processing of their applications are not uncommon. Such delays have been well-documented. *See, e.g.*, Ruth Morris, *Backlogs Add Years to Green Card Wait*, SUN-SENTINEL, July 23, 2006, at Local 1A (the USCIS has "acknowledged that since the Sept. 11, 2001, terrorist attacks, federal background checks have caused lengthy delays."); *Anti-Terror Measures Delay "Green Card" Processing*, SAN JOSE MERCURY NEWS, September 23, 2004 at 5A ("The number of foreigners who became permanent U.S. immigrants dropped sharply in 2003 as anti-terrorism measures delayed the processing of applications."); Mary Beth Sheridan, *Long, Nervous Green Card Wait; Backlog at Federal Agency Complicates Lives of Immigrants*, THE WASHINGTON POST, February 11, 2004, at B1 ("processing time for many applications has grown – in some cases to more than four years.")

## PLAINTIFFS' FACTUAL ALLEGATIONS

Plaintiffs are all nationals of South Korea living in New York. (Complaint at ¶¶ 5, 6 and 7.) None speak English and all communicate exclusively in Korean. (*Id.* at ¶¶ 42, 43.)

Plaintiffs allege that Trica Matuszak is the daughter of EBI's principals, Charles Han Yoo and Hyun Sook Yoo, and is/was an officer, shareholder and/or employee of EBI. (*Id.* at ¶ 13.)

In Fall 2000, Plaintiff Kang Hyeon Seo traveled to EBI's office in Maryland and met with Min Jae Song, a case manager for EBI who is not named as a defendant in this action. Min Jae Song "described [EBI's] services" to him. (*Id.* at ¶¶ 44, 45, 46.)

In early 2001, Kang Hyeon Seo, returned to EBI's office in Maryland, this time with Plaintiffs Do Yun Hwang and Sang Hyun Lee. Plaintiffs met with Min Jae Song who stated that EBI could "secure permanent resident status" for them. (*Id.* at ¶¶ 47, 48.) Ms. Song offered Plaintiffs "a number of different plans," the price of which would depend on the estimated amount of time it would take for each Plaintiff to obtain permanent resident status. (*Id.* at ¶ 49.)

Around February 14, 2001, Plaintiffs returned to EBI's office in Maryland. This time, in addition to Min Jae Song, Plaintiffs also met Tricia Matuszak. (*Id.* at ¶¶ 50, 51.) Because Ms. Matuszak does not speak Korean, Plaintiffs spoke exclusively with Ms. Song. (*Id.* at ¶ 52.) Min Jae Song represented to Plaintiffs that Tricia Matuszak was an immigration attorney. (*Id.* at ¶ 52.) Min Jae Song counseled Plaintiffs on their eligibility for permanent residency. (*Id.* at ¶ 55.) None of the Plaintiffs alleges a single misrepresentation made by Tricia Matuszak.

Two or three months later, Plaintiffs again met with Min Jae Song. Min Jae Song told Plaintiffs that they would have to work for their sponsoring companies for a short period of time. (*Id.* at ¶ 59.)

4

In addition to these common allegations, in support of their claims against Ms. Matuszak, Plaintiffs also make the following individualized allegations, none of which further elucidate a claim against Ms. Matuszak:

### A.    DO YUN HWANG'S ALLEGATIONS

On February 14, 2001, Plaintiff Do Yun Hwang entered into a contact with EBI pursuant to which he agreed to "pay $28,000 for [EBI's] services." (*Id.* at ¶ 60.) Plaintiff does not specify those services and does not attach a copy of his contract with EBI as an exhibit to the complaint.

Plaintiff alleges that he paid EBI $7,000 on the day that he signed the contract, and paid the remainder of the amounts due under the contract at some unspecified period of time. (*Id.* at ¶¶ 60, 64, 65.)

In April 2001, EBI obtained for Plaintiff a job offer with Defendant Allen Family Foods. (*Id.* at ¶ 66.) On April 10, 2001, EBI later filed a Form I-140 immigrant visa application for Plaintiff. (*Id.* at ¶¶ 66, 71.) The immigrant visa petition was later approved. (*Id.* at ¶ 71.)

On May 21, 2002, after Plaintiffs' Form I-140 was approved, EBI filed on Plaintiffs' behalf a Form I-485 application for adjustment of status to legal permanent resident. (*Id.* at ¶ 72.)

Plaintiff worked Defendant Allen Family Foods from March 2003 to May 2004 and later from November 2004 through May 2005. (*Id.* at ¶ 73.)

On May 24, 2005, Plaintiff received his interview with immigration authorities, a prerequisite to obtaining approval of his Form I-485 application. (*Id.* at ¶ 77.) EBI agreed to provide Plaintiff with an attorney to accompany him to interview, but Plaintiff declined. (*Id.* at ¶ 78.)

USCIS has not ruled on his application for adjustment of his status to permanent resident which is still pending.

Plaintiff does not make a single allegation concerning Ms. Matuszak.

## B.   SANG HYUN LEE'S ALLEGATIONS

On February 14, 2001, Plaintiff Sang Hyun Lee entered into a contact with EBI pursuant to which he agreed to "pay $28,000 for [EBI's] services." (*Id.* at ¶ 84.) Plaintiff does not specify those services and does not attach a copy of his contract with EBI as an exhibit to the complaint.

Plaintiff alleges that he paid EBI $7,000 the day he signed the contract, and paid the remainder of the amounts due under the contract at some unspecified period of time. (*Id.* at ¶¶ 84, 89, 90.)

In April or May 2001, EBI obtained for Plaintiff a job offer with Defendant Allen Family Foods. (*Id.* at ¶ 91.) On May 3, 2001, EBI filed a Form I-140 immigrant visa application on behalf of Plaintiff. (*Id.* at ¶¶ 91, 96.) On August 20, 2001, the Form I-140 application was approved. (*Id.* at ¶ 96.)

On May 17, 2002, EBI filed a Form I-485 application for adjustment of Plaintiff's status to legal permanent resident. (*Id.* at ¶ 97.)

Plaintiff worked for Defendant Allen Family Foods from February 2003 through February 2004. (*Id.* at ¶ 98.)

On January 30, 2004, EBI submitted a second Form I-140 application on Plaintiffs' behalf. (*Id.* at ¶ 100.) The application was signed by Tricia Matuszak. (*Id.* at ¶ 101.) At the same time, EBI filed a second Form I-485 application of Plaintiff's behalf. (*Id.* at ¶ 102.)

On February 26, 2004, USCIS denied Plaintiffs' initial Form I-485 application because Plaintiffs' first Form I-140 application had been revoked on the basis of fraud. (*Id.* at ¶ 103.)

Following receipt of this letter, Plaintiff neither sought to rescind his contract with EBI or requested his money back from EBI.  Plaintiff's second I-140 application, which was filed *before* the original Form I-140 was revoked, was approved on March 15, 2004.  (*Id.* at ¶ 113.) Defendant went back to work for Defendant Allen Family Foods on April 2005.  (*Id.* at ¶ 114.)

In December 2005, Plaintiff was interviewed by USCIS, a prerequisite to approval of his Form I-485 application.  He was accompanied by his pastor and an attorney.  (*Id.* at ¶ 115, 116.) Plaintiff paid $700 for representation by this attorney.  (*Id.* at ¶ 118.)

USCIS has not ruled on his second I-485 application for adjustment of his status to permanent resident which is still pending.

### C.   KANG HYEON SEO'S ALLEGATIONS

On February 14, 2001, Plaintiff Kang Hyeon Seo entered into a contact with EBI.  (*Id.* at ¶ 126, Exhibit A.)  Pursuant to the contract, Plaintiff agreed to pay EBI $42,000 in four installments: $10,500 upon signing the contract, $10,500 upon receiving an employment agreement, $10,500 upon obtaining an employer signature on a Form I-140 and $10,500 within 30 days of approval of the Form I-140 visa immigrant petition.  (*Id.* at Exhibit A.)

Plaintiff paid $10,500 upon signing, and admits to paying all of the other installments.  (*Id.* at ¶ 126, 130, 131.)  Plaintiff does not specify when the remainder of the installment payments were made, but presumably they were made following completion of each condition precedent in the contract.

In March 2001, Defendant Mountaire offered Plaintiff a job.  (*Id.* at ¶ 131.)  On March 15, 2001, EBI filed a Form I-140 visa immigrant petition of Plaintiff's behalf.  (*Id.* at ¶¶ 132, 137.) The I-140 was approved on or about October 18, 2001.  (*Id.* at ¶ 137.)

7

On April 22, 2004, EBI filed a form I-485 application to adjust status to permanent legal resident on Plaintiff's behalf. (*Id.* at ¶ 139.) Plaintiff worked for Mountaire from September to December 2004. (*Id.* at ¶ 140.)

From January through July 2005, Plaintiff worked for Defendant Allen Family Foods. (*Id.* at ¶ 142.) On March 2, 2005, to reflect the change in Plaintiff's employer, EBI filed a job portability request on behalf of Plaintiff. The job portability request was signed by Tricia Matuszak. (*Id.* at ¶ 144.)[3]

On March 8, 2005, Plaintiff was interviewed by immigration authorities accompanied by a lawyer. (*Id.* at ¶ 148.) Plaintiff paid $700 for this lawyer's services. (*Id.* at ¶ 150.)

USCIS has not ruled on Plaintiffs' Form I-485 application for adjustment of his status to permanent resident which is still pending.

### D.     ALLEGATIONS COMMON TO ALL PLAINTIFFS

On June 30, 2006, EBI wrote each Plaintiff a letter advising them that EBI had ceased operations, and offering to return Plaintiffs their files and provide them with $1,250, which could be used to help defray any costs that they might incur as a result of EBI's going out of business. (Complaint at ¶ 41; copies of these letters are attached hereto as Exhibit A.)

Each Plaintiff refused EBI's offer. Instead, in violation of Federal of Rule of Civil Procedure 20, Plaintiffs joined together and filed this complaint for purposes of prejudicing Ms. Matuszak and the other Defendants.[4] The complaint contains 12 causes of action. Ms. Matuszak is named as a Defendant in five of those causes of action: the fourth cause of action for fraud, the

---

[3] Section 106(c) of the American Competitiveness Act of the 21st Century enables an applicant with an approved I-140 petition and a Form I-485 application that has been outstanding and unadjudicated for at least 180 days, to change jobs or employers within the same or similar occupations without affecting the validity of the approved Form I-140, even if the approved Form I-140 has been withdrawn.

[4] Concurrently herewith, Ms. Matuszak is seeking to sever these actions as improperly joined.

8

sixth cause of action for conspiracy to defraud, the eighth and tenth causes of action for unfair

and deceptive practices, and the ninth cause of action for constructive fraud.  Collectively,

Plaintiffs seek over $1.3 million in damages, plus punitive damages, against Tricia Matuszak.

## ARGUMENT

## I.    PLAINTIFFS' CLAIMS ARE GOVERNED BY NEW YORK LAW

As originally noted by Defendant Empire Kosher Poultry in their Motion to Dismiss filed

in the Lee Action, Plaintiffs' claims in this action are governed by the law of New York because

Plaintiffs' alleged injuries occurred in New York.  Defendant Empire Kosher Poultry's February

26, 2007 Memorandum in Support of Motion to Dismiss, at 7-9 (*citing Lab. Corp. of Am. v.*

*Hood*, 911 A.2d 841, 845 (Md. 2006) and *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 511

(4th Cir. 1986)).[5]  Indeed, Plaintiffs concede that New York law governs their claims, having

included three causes action in their complaint -- causes of action 8, 10 and 11 for unfair and

deceptive practices -- premised upon New York statutory law.

However, because Plaintiffs' claims should be dismissed regardless of whether the Court

applies New York or Maryland law, Defendant Tricia Matuszak will rely on authority from both

jurisdictions in support of her motion to dismiss.[6]

---

[5] Defendant Tricia Matuszak expressly adopts and incorporates by reference this portion of
Defendant Empire Kosher's Memorandum.

[6] Also as noted by Defendant Empire Kosher, under New York law, Plaintiffs' damages are
limited to their out of pocket expenses, *i.e.*, the amounts they paid under their contracts with EBI.
*See Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993) ("New York law awards only
'out-of-pocket' expenses in fraud cases, entitling plaintiffs to damages solely for their actual
pecuniary losses"); *Citicorp Int'l Trading Co., Inc. v. Western Oil & Refining Co., Inc.*, 790 F.
Supp. 428, 436 (S.D.N.Y. 1992) ("claim for damages for emotional distress must be dismissed
because 'this species of injury is not redressable under a business fraud theory of liability'")
(*quoting Posner v. Minnesota Mining & Mfg. Co., Inc.*, 697 F. Supp. 122, 123 (E.D.N.Y. 1988));
*Juman v. Louise Wise Svcs.*, 663 N.Y.S.2d 483, 489 (N.Y. Sup. Ct. 1997) ("The damages
recoverable for fraud do not include emotional distress").

## II.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.   The Standard Governing Motions To Dismiss

Dismissal of a claim under Rule 12(b)(6) is appropriate if, after accepting all well-pleaded allegations in Plaintiffs' complaint as true and drawing all reasonable factual inferences from those facts in Plaintiffs' favor, the Court finds that Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).

Although the Court must accept Plaintiffs' factual allegations as true, the Court is not bound by Plaintiffs' legal conclusions. *See, e.g., Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (noting that the "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions); *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995) (affirming Rule 12(b)(6) dismissal with prejudice because the plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law).

Moreover, Rule 9(b) requires that, in all averments of fraud, the "circumstances constituting fraud or mistake be stated with particularity." Fed. R. Civ. P. 9(b). These circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999).

Further, "where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Andrews v. Fitzgerald*, 823 F. Supp. 356, 373 (M.D.N.C. 1993) (*citing Di Vittorio v. Equidyne*

10

*Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).  A complaint fails to meet the

particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of

fraud against multiple defendants without identifying each individual defendant's participation in

the alleged fraud.  *Wang Labs., Inc. v. Burts*, 612 F. Supp. 441, 445 (D. Md. 1984); *Wiener v.

Napoli*, 760 F. Supp. 278, 284 (E.D.N.Y. 1991) (where "multiple defendants are involved in the

alleged fraud, it is especially important that the fraud be particularized as to each one of them").

**B.     Plaintiffs Have Failed To State a Fraud Claim Against Tricia Matuszak**

Plaintiffs' fourth cause of action -- the first against Ms. Matuszak -- is for fraudulent

misrepresentation.  To state a claim for fraudulent misrepresentation under New York law, a

plaintiff must allege that: (1) the party made a material false statement, (2) with knowledge of its

falsity, (3) the party intended to defraud the complaining party thereby, (4) the complaining party

justifiably or reasonably relied upon the representation, and (5) the complaining party suffered

damage as a result of such reliance.  *Manning v. Utilities Mut. Ins. Co., Inc.*, 254 F.3d 387, 400

(2d Cir. 2001); *Kaye v. Grossman*, 202 F.3d 611, 614 (2d Cir. 2000).[7]

It is black letter law that a defendant such as Ms. Matuszak may not be found liable for

fraud solely on the basis of being an officer, shareholder or employee of EBI.  Instead, she can

only be liable for fraud if she personally directed or actively participated or cooperated in the

fraud.  *See People by Abrams v. Apple Health & Sports Clubs, Ltd., Inc.*, 80 N.Y.2d 803, 807

---

[7] Similarly, the elements of a fraud action in Maryland are: (1) that the representation made is
false;  (2) that its falsity was either known to the speaker, or the misrepresentation was made
with such a reckless indifference to truth as to be equivalent to actual knowledge;  (3) that it was
made for the purpose of defrauding the person claiming to be injured thereby;  (4) that such
person not only relied upon the misrepresentation, but had a right to rely upon it in the full belief
of its truth, and that he would not have done the thing from which the injury resulted had not
such misrepresentation been made;  and (5) that he actually suffered damage directly resulting
from such fraudulent misrepresentation.  *Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534 (Md.
1982).

(N.Y. 1992) (*citing Marine Midland Bank v. Russo Produce Co.*, 50 N.Y.2d 31, 44 (1980)); *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 399-400 (S.D.N.Y. 2004).[8]

Plaintiffs' fraud claims against Ms. Matuszak must be dismissed because none of the Plaintiffs alleges that Ms. Matuszak directed or actively participated in a fraud or caused damage. Indeed, not one of the Plaintiffs alleges a single representation made by Ms. Matuszak to him or her, much less a false representation that induced them to enter into a contract with EBI. It would have been impossible for Ms. Matuszak to have made any representation whatsoever to Plaintiffs as they only speak Korean and she only speaks English. (Complaint at ¶¶ 42, 43 and 52.)

Plaintiffs allege an EBI "case manager" named Min Jae Song, led them to believe that Tricia Matuszak was an attorney. (*Id.* at ¶ 52.) However, this alleged representation was made by Min Jae Song, not Tricia Matuszak. Because the alleged misrepresentation was made in Korean, there is no allegation that Ms. Matuszak had any knowledge of or responsibility for this alleged representation. Further, this alleged misrepresentation is simply not material. Plaintiffs do not -- and cannot -- allege that the reason that they entered into the contracts with EBI was because they thought Ms. Matuszak was a lawyer. Plaintiffs retained EBI for employment and immigration services -- not legal advice. Whether or not Ms. Matuszak was a lawyer is immaterial to Plaintiffs' claims.

---

[8] The rule is the same in Maryland. *See, e.g.*, *Tedrow v. Deskin*, 290 A.2d 799, 802 (Md. 1972) ("participation in the tort is essential to liability. If the officer takes no part in the commission of the tort committed by the corporation, he is not personally liable therefore unless he specifically directed the particular act to be done, or participated or cooperated therein.")

The only actions alleged to have been taken by Tricia Matuszak is that Plaintiff Sang Hyun Lee alleges that Tricia Matuszak signed her Form I-140 immigrant visa petition. (*Id.* at ¶ 101.) Plaintiff Kang Hyeon Seo alleges that Tricia Matuszak signed her job portability request. (*Id.* at ¶ 144.) But signing these documents cannot conceivably support a fraud claim which requires a misrepresentation.

A fraud claim also requires damages, and none of the Plaintiffs have alleged that Ms. Matuszak took any action that caused them damages. Each concedes that EBI did what it contracted to do, obtain for it approved immigrant visa petitions. Even if Plaintiffs' claim that someone at EBI other than Tricia Matuszak promised them green cards were accurate -- and it is not -- their claims fail for a lack of damages. Each Plaintiff has alleged a straightforward immigration application process, facing few obstacles. Each Plaintiff already has been interviewed by the USCIS, and each is awaiting approval of its Form I-485 application for adjustment of status to permanent resident. Although each Plaintiff alleges a delay by USCIS in processing their applications, none of the Plaintiffs has alleged that Tricia Matuszak is responsible for that delay. Unless and until those applications are denied, and there is no evidence that they will be, Plaintiffs have not been damaged.

### C.   Plaintiffs Also Have Failed To State a Conspiracy to Defraud Claim Against Tricia Matuszak

Plaintiffs' sixth cause of action -- the second against Ms. Matuszak -- is for conspiracy to defraud. This claim should be dismissed because there is no independent cause of action for civil conspiracy in New York. *See Small v. Lorillard*, 720 N.E.2d 892, 898 (N.Y. 1999); *Danahy v. Meese*, 446 N.Y.S.2d 611 (N.Y. App. Div. 1981); *Callahan v. Gutowski*, 111 A.D.2d 464, 465 (N.Y. App. Div. 1985) ("A claim of conspiracy to commit fraud, standing alone, is not actionable.") "[M]ere conspiracy to commit a fraud is never of itself a cause of action."

13

*Brackett v. Griswold*, 20 N.E. 376, 379 (N.Y. 1889).[9]   Plaintiffs' conspiracy claim should be

dismissed because they have failed to allege a viable fraud claim against any Defendant.

To the extent that Plaintiffs purport to state a conspiracy between Ms. Matuszak and EBI,

or its other alleged officers or employees, the claim must be dismissed as a matter of law because

"officers, agents and employees of a single corporate entity are legally incapable of conspiring

together." *Nassau County Employee "L" v. County of Nassau*, 345 F. Supp. 2d 293, 304

(E.D.N.Y. 2004); *Quinn v. Nassau County Police Dep't*, 53 F. Supp. 2d 347, 359 (E.D.N.Y.

1999); *Monte v. Ernst & Young LLP*, 330 F. Supp. 2d 350, 366 (S.D.N.Y. 2004).[10]

Moreover, Plaintiffs' conspiracy claim should be dismissed because a conspiracy claim

requires factual allegations that each of the alleged co-conspirators knowingly participated in the

conspiracy. *In re Harvard Knitwear, Inc.*, 153 B.R. 617, 627-28 (Bankr. E.D.N.Y. 1993);

*Gallant v. Kanterman*, 603 N.Y.S.2d 315, 318 (N.Y. App. Div. 1993).   It is not sufficient to

merely identify an individual as a corporate officer.   Rather, a corporate officer's participation in

a conspiracy must be specifically set forth.   *See State of New York v. Dairylea Coop., Inc.*, 570 F.

Supp. 1213, 1216-17 (S.D.N.Y. 1983).   Thus, under New York law, to state a claim of civil

conspiracy against Ms. Matuszak, Plaintiffs are required to allege (i) an agreement between her

and the wrongdoer and (ii) a wrongful act committed in furtherance of the conspiracy.

---

[9] Similarly, the Maryland Court of Appeals has held that "[i]t was improper pleading [for the
plaintiff] to allege . . . conspiracy in separate counts of the . . . complaint, as if they were causes
of action independent of an underlying tort." *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 110
n. 6 (Md. 2000); *see also Damazo v. Wahby*, 270 A.2d 814 (Md. 1970).

[10] Maryland law is in accord.   *See e.g. Bank Realty, Inc. v. Practical Management Tech., Inc.*,
1991 WL 97490, *4 (4th Cir. 1991) (recognizing and applying the intracorporate immunity
doctrine); *see also American Chiropractic Assoc. Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212,
224 (4th Cir. 2004) ("[A]cts of corporate agents are acts of the corporation itself, and corporate
employees cannot conspire with each other or with the corporation") (*citing ePlus Technology v.
Aboud*, 313 F.3d 166, 179 (4th Cir. 2002)).

14

*Brownstone Inv. Group, LLC v. Levey*, 468 F. Supp. 2d 654, 660 (S.D.N.Y. 2007) (citations and quotations omitted).[11]

"[T]o survive a motion to dismiss, a complaint must contain more than general allegations in support of the conspiracy.  Rather, it must allege the specific times, facts, and circumstances of the alleged conspiracy." *Fitzgerald v. Field*, 1999 WL 1021568, *4 (S.D.N.Y. 1999) (citations omitted).  "Accordingly, a bare conclusory allegation of conspiracy does not state a cause of action." *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981) (citations omitted).  None of the Plaintiffs has alleged that Tricia Matuszak entered into an agreement with any other Defendant to defraud, much less that she took any action in support the alleged conspiracy.  Accordingly, Plaintiffs' conspiracy claim against Ms. Matuszak must be dismissed.

### D.    Plaintiffs Have Failed To State an Unfair and Deceptive Practices Claim Against Tricia Matuszak

Plaintiffs' eighth and tenth causes of action are for unfair and deceptive practices pursuant to N.Y. Gen. Bus. Law 349(a).[12]  That statute provides that: "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  The elements of a claim under Section 349 are that (1) the challenged act or practice was consumer-oriented; (2) the act was misleading in a material

---

[11] Likewise, in Maryland, a civil conspiracy also requires an agreement between two or more people to engage in an unlawful act. *See Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 821 (D. Md. 2005); *Alexander & Alexander, Inc. v. B. Dixon Evander & Assoc., Inc.*, 650 A.2d 260, 265 n. 8 (Md. 1994).

[12] These causes of action, premised on New York state law, must be dismissed if the Court finds that Maryland law applies to Plaintiffs' claim. *See e.g. Goshen v. Mutual Life Ins. Co. of New York*, 774 N.E.2d 1190, 1195 (N.Y. 2002) (to state a claim under Section 349 "the transaction in which the consumer is deceived must occur in New York."); *In re Rezulin Products Liability Litig.*, 392 F. Supp. 2d 597, 612 (S.D.N.Y. 2005) (finding New York law applicable, applying Section 349, and dismissing the "claims under the consumer protection and deceptive trade practices statutes of all other states.").

way; and (3) the plaintiff suffered injury as a result of the deceptive act. *Oswego Laborers'*

*Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 744 (N.Y. 1995).

Plaintiffs' unfair and deceptive practices claims against Ms. Matuszak must be dismissed

for the same reason that their fraud claims must be dismissed – Plaintiffs have failed to assert a

single factual allegation that Ms. Matuszak engaged in a material misleading act or that they

have suffered. *See Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 438

(S.D.N.Y. 2004) ("to state a claim under [Section 349] plaintiff must allege with some specificity

the allegedly deceptive acts or practices that form the basis for the claim").

Not only has no act been alleged -- no deceptive practice that was consumer oriented was

even mentioned. To state a claim under Section 349, Plaintiffs must allege a deceptive act that

has "a broader impact on consumers at large" that "may not be limited to just the parties." *Teller*

*v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 772 (N.Y. App. Div. 1995). Private contract disputes,

such as this dispute between Plaintiffs and EBI, which are unique to the parties do not fall within

the ambit of the statute. *Id.* at 773; *Oswego*, 647 N.E.2d at 744 (*citing Genesco Entm't v. Koch*,

593 F. Supp. 743, 752 (S.D.N.Y. 1984)). Section 349 "was not intended to supplant an action to

recover damages for breach of contract between parties to an arm's length contract." *Vitolo v.*

*Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 33 (E.D.N.Y. 2006).

Indeed, "[t]he typical violation contemplated by the statute involves an individual

consumer who falls victim to misrepresentations made by a seller of consumer goods usually by

way of false and misleading advertising." *Teller*, 630 N.Y.S.2d at 773. "The New York cases

where plaintiffs have recovered under section 349(h) further reflect its consumer orientation

since they uniformly involve transactions where the amount in controversy is small." *Id.*

(internal citations omitted).

16

Here, each Plaintiff negotiated and signed different, albeit similar, contracts with EBI. (*See* Complaint at ¶¶ 60, 84, 126 and Exhibits A.)   Moreover, each Plaintiff has alleged an entirely different set of factual allegations in support of their claims, and although Plaintiffs complain of similar harms, the harm they have asserted does not implicate consumers at large. Moreover, the amounts of the transactions at issue -- Defendants collectively allege over $1.3 million in damages -- reflect the fact that Plaintiffs' contracts with EBI are not the type of small consumer transactions that the statute was meant to address.

Plaintiffs' claims, which are nothing more than individualized contract disputes which Plaintiffs improperly have joined together are analogous to disputes between policy holders and their insurance companies. "Several courts have considered whether disputes between policy holders and insurance companies concerning the scope of coverage can amount to conduct falling within Section 349.  Almost uniformly, those courts have held that such disputes are nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349." *See Lava*, 326 F. Supp. 2d at 438 (citation omitted).

Moreover, as with Plaintiffs' fraud claims, because Plaintiffs are all still awaiting a decision on their Form I-485 applications for adjustment of status, and there is no evidence that those applications will be denied, Plaintiffs' claims also fail to allege damages.  Accordingly, Plaintiffs' Section 349 claims against Ms. Matuszak should be dismissed.

### E.   Plaintiffs Have Failed To State a Constructive Fraud Claim Against Tricia Matuszak

Plaintiffs' ninth cause of action is for constructive fraud.  Under New York law, in order to establish a claim for constructive fraud, a party must establish the same elements as a claim for fraud, except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties. *See Petrello v. White*, 412 F. Supp. 2d 215, 229 (E.D.N.Y.

17

2006); *Burrell v. State Farm & Cas. Co.*, 226 F. Supp. 2d 427, 438 (S.D.N.Y. 2002) (*citing Klembczyk v. Di Nardo*, 705 N.Y.S.2d 743, 744 (N.Y. App. Div. 1999)).

Plaintiffs' constructive fraud claim should be dismissed for the same reasons that their fraud claims should be dismissed, failure to allege a misrepresentation or damages, and for the additional reason that each Plaintiff has failed to allege a fiduciary relationship with Tricia Matuszak. Indeed, Plaintiffs have alleged no relationship with Ms. Matuszak whatsoever.

Presumably, Plaintiffs will seek to infer a fiduciary relationship with Ms. Matuszak from the fact that they had a contractual relationship with EBI and they have alleged Ms. Matuszak was an officer, employee or shareholder of EBI. However, none of the Plaintiffs has alleged a fiduciary relationship with EBI. In New York, there is no fiduciary relationship between parties acting and contracting at arms-length to a business transaction. *See In re Ames Dep't Stores, Inc.,* 274 B.R. 600, 626 (Bankr. S.D.N.Y. 2002); *Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.*, 601 F. Supp. 770, 772 (S.D.N.Y. 1985); *Oursler v. Women's Interart Ctr., Inc.*, 566 N.Y.S.2d 295, 297 (N.Y. App. Div. 1991) (stating that "[a] conventional business relationship, without more, does not become a fiduciary relationship by mere allegation").

It is axiomatic that "parties to a commercial contract do not ordinarily bear a fiduciary relationship to one another unless they specifically so agree." *Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp. 2d 731, 733-34 (S.D.N.Y. 2000). Nor do fiduciary duties arise solely because one party has expertise that is superior to another. *See Boley v. Pineloch Assoc., Ltd.*, 700 F. Supp. 673, 681 (S.D.N.Y. 1988) (holding that "[a]llegations of reliance on another party with superior expertise, standing by themselves, will not suffice").

Similarly, under Maryland law, constructive fraud requires the breach of a legal or equitable duty. *See Scheve v. McPherson*, 408 A.2d 1071, 1076 (Md. 1979) (defining

18

constructive fraud as "a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests.")  Plaintiffs have failed to allege the existence of any legal or equitable duty owed to them by Ms. Matuszak.  *See ADCS, Inc. v. Kimbrough*, 30 Fed. Appx. 225, 229 (4th Cir. 2002) ("not only are there no facts regarding any misrepresentations made by Kimbrough, plaintiff has not identified, nor are we aware of, any legal duty Kimbrough had that he breached").

## CONCLUSION

For these reasons, Tricia Matuszak's motion to dismiss should be granted and the claims against her dismissed.

Respectfully submitted,

Dated: March 30, 2007

By: _____

Sara Z. Moghadam (Bar No. 14218)
Nancy Luque
Steven K. Barentzen
DLA PIPER US LLP
1200 Nineteenth Street, NW
Washington, DC  20036-2430
Telephone:   202.861.3900
Facsimile:    202.223.2085

*Attorneys for Tricia Matuszak*

19